Jill Mary **KOHR**, Executrix of the Estate of Robert H. Kohr, Deceased, Plaintiff-Appellee,

v.

**ALLEGHENY AIRLINES, INC.**, and United States of America, Defendants-Appellants,

v.

**FORTH CORPORATION** et al., Third-Party Defendants-Appellees.

Nos. 73–1392, 73–1393.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 14, 1974.

Decided Sept. 20, 1974.

Rehearing and Rehearing En Banc Denied Nov. 26, 1974.

Walter E. Rutherford, New York City, and Emerson Boyd, Indianapolis, Ind. (Robert L. Alpert, Robert B. Haserot, New York City, and William V. Hutchens, Indianapolis, Ind., on the brief), for Allegheny Airlines, Inc., and GECC Leasing Corp.

R. Stanley Lawton and Arthur P. Kalleres, Indianapolis, Ind., for Brookside Corp.

James E. Rocap, Jr., and Thomas P. Ledgerwood, Indianapolis, Ind., for Forth Corp.

Floyd W. Burns and Richard R. McDowell, Indianapolis, Ind., for Lee Le-May, Administrator.

Harlington Wood, Jr., Asst. Atty. Gen., Washington, D. C., Stanley B. Miller, U. S. Atty., Indianapolis, Ind., Morton Hollander and Michael H. Stein, Washington, D. C., for the United States.

Before SWYGERT, Chief Judge, KILEY,[1] Senior Circuit Judge, and HOFFMAN,[2] Senior District Judge.

SWYGERT, Chief Judge.

Defendants-appellants Allegheny Airlines, Inc. and the United States, appeal from the dismissal of their cross-claims and third-party complaints for indemnity and contribution against defendants-appellees Brookside Corporation (Brookside), Forth Corporation (Forth is a wholly-owned subsidiary of Brookside), and the estate of Robert W. Carey. The instant actions arise out of a mid-air collision on September 9, 1969, in the airspace over Fairland, Indiana between an Allegheny Airlines DC–9–31 jet aircraft and a Piper Cherokee aircraft piloted by Robert W. Carey and owned by Forth. The events surrounding the collision are set out in detail in the companion case to this action. Allegheny Airlines, Inc. and GECC Leasing Corp. v. United States of America, et al., 504 F.2d 104 (7th Cir. 1974), and need only be briefly recounted here.

The Allegheny aircraft was operated as Flight No. 853 en route from Cincinnati, Ohio to Indianapolis, Indiana. At the time of the collision Flight No. 853 was flying under an instrument flight rules clearance from Cincinnati to Indianapolis and was receiving and adhering to air traffic control radar directions from an air traffic controller employed by the Federal Aviation Administration at the Indianapolis Approach Control facility located at Indianapolis' Weir Cook Airport. The Piper Cherokee aircraft was operated by Carey, a student pilot, under visual flight rules. At the time of the collision Carey was engaged in a solo cross-country flight from Brookside Airport, McCordsville, Indiana to Bakalar Air Force Base, Columbus, Indiana. As a result of the mid-air collision both aircraft were totally destroyed and all eighty-three occupants were killed.

Subsequent to the accident, wrongful death actions were commenced on behalf of the estates of all the deceased passengers save one, the estates of three of the four Allegheny crew members, and the estate of Robert W. Carey. In addition, property damages suits were initiated to recover for the destruction of the two aircraft. All of these suits were commenced in various federal district courts on the basis of diversity of citizenship as to defendants Allegheny, Brookside, Forth, and the estate of Carey, and the Federal Tort Claims Act as to the defendant United States. The Judicial Panel on Multidistrict Litigation assumed jurisdiction over the various ac-

1. Judge Kiley heard oral argument in these appeals, but he died on September 6, 1974 before he considered this opinion.

2. Senior Judge Julius J. Hoffman of the United States District Court for the Northern District of Illinois is sitting by designation.

tions commenced outside of Indiana and pursuant to 28 U.S.C. § 1407 transferred them to the United States District Court for the Southern District of Indiana for the purpose of supervision of the pretrial discovery. In re Mid-Air Collision Near Fairland, Indiana, 309 F.Supp. 621 (Jud.Pan.Mult.Lit.1970). Subsequent to the section 1407 transfer, the district court judge issued orders pursuant to 28 U.S.C. § 1404 transferring cases from respective transferor forums to the United States District Court for the Southern District of Indiana and consolidated those cases with other companion cases that had been initially commenced in the Indiana district court. By the time of trial Allegheny and the United States had filed cross-claims and third-party complaints against Brookside, Forth, and the estate of Carey seeking indemnity and contribution.

The first group of passenger cases was assigned to trial on February 22, 1972. The district judge severed all cross-claims and third-party complaints between the parties and deferred resolution of those issues until a future date. After the commencement of the February trial which involved as defendants Allegheny, the United States, Brookside, Forth, and the estate of Carey, an agreement was arrived at between the United States and the liability insurers of Allegheny for a pro-rata formula to be utilized between them in disposing of all cases, whether by settlement or judgment. The defendants Forth, Brookside, and estate of Carey were not parties to, and did not contribute anything to or under the agreement. Thereafter, on motion of plaintiffs and defendants Allegheny and the United States, the first group of passenger cases on trial were terminated and all claims, cross-claims, and third-party complaints were dismissed without prejudice pending a hearing on the reasonableness of the compromise. The district court found the compromise to be reasonable and accordingly Allegheny's insurers and the United States proceeded to settle the remaining passenger cases.

On December 5, 1972 the district court entered an order dismissing all actions including the plaintiffs' complaints as well as defendants' cross-claims, third-party complaints, and counterclaims. All such claims were to be dismissed with prejudice as of January 5, 1973. Both Allegheny and the United States moved to vacate the December 5 entry objecting to the dismissal with prejudice of their claims over for indemnity and contribution against Forth, Brookside, and the estate of Carey. At a hearing on January 5, 1973 the district judge vacated its prior order of December 5, 1972 and directed that the plaintiffs' actions were to be dismissed without prejudice. At the same time the district judge allowed defendants Forth, Brookside, and the estate of Carey to file additional paragraphs of their answer pleading the defenses of res judicata, collateral estoppel, voluntary payment, accord and satisfaction, and failure to state a claim for relief in that no right to indemnity and contribution existed under Indiana law.

Thereafter, the court proceeded to grant the motions of Forth, Brookside, and the estate of Carey to dismiss the claims by Allegheny and the United States for indemnity and contribution by virtue of the application of Indiana law. In addition, the court granted summary judgment to Brookside, Forth, and the estate of Carey on the basis of the affirmative defenses of voluntary payment and accord and satisfaction in that the memorandum of agreement between Allegheny's liability insurers and the United States and the settlement of actions pursuant thereto constituted voluntary payments and accords and satisfactions. The court also granted summary judgment to Brookside on the separate defenses of res judicata and collateral estoppel as a result of the judgment entered in Allegheny Airlines, Inc. and GECC Leasing Corp. v. United States of America, et al., in which it had been previously held that Brookside Corporation was not responsible for the torts committed by its wholly-owned subsidiary Forth Corporation.

I

Allegheny and the United States raise various issues in an appeal, to which we address the following: (1) whether the district court erred in dismissing the

cross-claims and third-party complaints for indemnity and contribution for failure to state claims upon which relief may be granted; (2) whether the district court correctly granted summary judgment to Brookside on the basis of res judicata and collateral estoppel; (3) whether the district court properly entered summary judgment on the basis that settlement of plaintiffs' claims by Allegheny and the United States constituted voluntary payment which barred any claims by Allegheny and the United States against the defendants; (4) whether the district court erred in granting summary judgment to Forth, Brookside, and the estate of Carey on the ground that the agreement between Allegheny's liability insurers and the United States constituted an accord and satisfaction thereby barring any claim for indemnity and contribution; and (5) whether the district court erred in entering an order dismissing all plaintiffs' claims without prejudice.

In view of our decision in the companion case of Allegheny Airlines, Inc. and GECC Leasing Corp. v. United States of America, et al., 504 F.2d 104 (7th Cir. 1974), Allegheny and the United States are precluded on the basis of the doctrines of res judicata and collateral estoppel from further pursuit of their claims for contribution and indemnity from the defendant Brookside. Accordingly, we affirm the district court on that issue. With respect to the remaining issues, however, we reverse and remand to the district court for trial.

## II

Allegheny contends that it was error for the district court to dismiss its cross-claims and third-party complaints for indemnity and contribution. The district court held that Indiana law was controlling on these claims and that under Indiana law there could be no contribution and indemnity under that state's law. Allegheny urges that a federal rule of contribution and indemnity should govern in the instant action. Failing the application of a federal law of contribution Allegheny contends that

in view of the multiplicity of state jurisdictions involved, with the various plaintiffs instituting actions in numerous states other than Indiana, the trial judge should have conducted an evidentiary hearing to facilitate a proper choice of law analysis. Had the district judge done so, it is claimed that jurisdictions other than Indiana would be found to have a more substantial interest in having their laws on contribution and indemnity applied. In addition, Allegheny contends that even assuming Indiana law controls, the district court misapplied the rules on contribution and indemnity.

■ Were it necessary, we would be inclined to agree with Allegheny that the district judge failed to engage in an adequate conflict of law analysis and that he erred on the application of Indiana law on contribution and indemnity. We need not reach these issues, however, for we agree with Allegheny that there should be a federal law of contribution and indemnity governing mid-air collisions such as the one here.

## III

The basis for imposing a federal law of contribution and indemnity is what we perceive to be the predominant, indeed almost exclusive, interest of the federal government in regulating the affairs of the nation's airways. Moreover, the imposition of a federal rule of contribution and indemnity serves a second purpose of eliminating inconsistency of result in similar collision occurrences as well as within the same occurrence due to the application of differing state laws on contribution and indemnity. Given the prevailing federal interest in uniform air law regulation, we deem it desirable that a federal rule of contribution and indemnity be applied.

■ That the federal interest in regulating airways is predominant was long ago recognized by Justice Jackson in Northwest Airlines v. Minnesota, 322 U.S. 292, 303, 64 S.Ct. 950, 956, 88 L.Ed. 1283 (1944):

Students of our legal evolution know how this Court interpreted the com-

merce clause of the Constitution to lift navigable waters of the United States out of local controls and into the domain of federal control. Gibbons v. Ogden, 9 Wheat. 1, 6 L.Ed. 23, to United States v. Appalachian Power Co., 311 U.S. 377 [61 S.Ct. 291, 85 L.Ed. 243]. Air as an element in which to navigate is even more inevitably federalized by the commerce clause than is navigable water. Local exactions and barriers to free transit in the air would neutralize its indifference to space and its conquest of time.

Congress has recognized the national responsibility for regulating air commerce. Federal control is intensive and exclusive. Planes do not wander about in the sky like vagrant clouds. They move only by federal permission, subject to federal inspection, in the hands of federally certified personnel and under an intricate system of federal commands. The moment a ship taxis onto a runway it is caught up in an elaborate and detailed system of controls. It takes off only by instruction from the control tower, it travels on prescribed beams, it may be diverted from its intended landing, and it obeys signals and order. Its privileges, rights, and protection, so far as transit is concerned, it owes to the Federal Government alone and not to any state government.

With the passage of the Federal Aviation Act of 1958, 49 U.S.C. § 1301 et seq., Congress expressed the view that the control of aviation should rest exclusively in the hands of the federal government. In section 1108 of the Act, 49 U.S.C. § 1508(a), it is clearly provided that:

(a) The United States of America is declared to possess and exercise complete and exclusive national sovereignty in the airspace of the United States, including the airspace above all inland waters and the airspace above those portions of the adjacent marginal high seas, bays, and lakes, over which by international law or treaty or convention the United States exercises national jurisdiction. Aircraft of the armed forces of any foreign nation shall not be navigated in the United States, including the Canal Zone, except in accordance with an authorization granted by the Secretary of State.

The explicit objective of the Act is to foster the development of air commerce. 49 U.S.C. § 1346. To that end, it has been recognized that the principal purpose of the Act is to create one unified system of flight rules and to centralize in the Administrator of the Federal Aviation Administration the power to promulgate rules for the safe and efficient use of the country's airspace. United States v. Christensen, 419 F.2d 1401 (9th Cir. 1969); Air Line Pilots Association v. Quesada, 276 F.2d 892 (2d Cir. 1960). When the notion of federal preemption over aviation is viewed in combination with the fact that this litigation ensues from a mid-air collision occurring in national airspace, that the Government is a party to the action pursuant to the Federal Tort Claims Act (28 U.S.C. § 1346(b) et seq.), and that this litigation has since its inception been subject to the supervision of the Judicial Panel created by the Multidistrict Litigation Act (28 U.S.C. § 1407 et seq.), there is no perceptible reason why federal law should not be applied to determine the rights and liabilities of the parties involved. The interest of the state wherein the fortuitous event of the collision occurred is slight as compared to the dominant federal interest. Accordingly, the rights and liabilities of Allegheny and the United States are peculiarly federal in nature and are to be governed by a federal rule of contribution and indemnity.[3]

---

3. In view of the aforementioned predominant federal interest in formulating a rule of contribution and indemnity we are of the view that the Federal Tort Claims Act is not an obstacle to the application of such a rule to the United State's claims. In addition we find no merit in defendants' argument that Allegheny and the United States are estopped to assert the invalidity of the dismissal of their cross-claims and third-party complaints.

## IV

■ Having determined that a federal rule of contribution and indemnity among joint tort-feasors should control in aviation collisions, we reject as being outmoded and entirely unsatisfactory, the contention that the federal rule should be one of "no contribution." We agree that "[t]here is an obvious lack of sense and justice in a rule which permits the entire burden of a loss, for which two defendants were equally, unintentionally responsible, to be shouldered on to one alone, according to the accident of a successful levy of execution, the existence of liability insurance, the plaintiffs' whim or spite, or his collusion with the other wrongdoer, while the latter goes scot free." Prosser, Law of Torts, § 50 (4th ed. 1971).

In our judgment the better rule is that of contribution and indemnity on a comparative negligence basis. Under such an approach the trier of fact will determine on a percentage basis the degree of negligent involvement of each party in the collision. The loss will then be distributed in proportion to the allocable concurring fault. In allocating the loss where as here that amount involves a settlement and not a judgment, the trier of fact must also establish what amount would be a reasonable settlement under the circumstances. On reaching such an amount each party contributes according to his degree of fault.

Allegheny and the United States contend that the district court improperly entered summary judgment against them with respect to defenses raised by the defendants claiming voluntary payment, and accord and satisfaction. Also it is contended by Allegheny and the United States that the district court erred in entering an order dismissing all plaintiffs' claims without prejudice.

■ As to the defense of voluntary payment, the defendants urge that the settlement of plaintiffs' claims by Allegheny and the United States constituted a voluntary payment which barred any claims by them against the defendants. We disagree for it is a well recognized policy that settlements are to be encouraged, and we have previously held that a voluntary settlement does not bar a subsequent suit for indemnity. Chicago, Rock Island & Pacific Ry. Co. v. United States, 220 F.2d 939, 941 (7th Cir. 1955). Moreover, we note that in applying the federal rule of contribution and indemnity the trier of fact is to make a determination as to what was a reasonable amount at which to settle. Such a determination would necessarily take into consideration the voluntary nature of the settlement.

We find to be without worth defendants' contention that the agreement between Allegheny's liability insurers and the United States constituted an accord and satisfaction thereby barring any claims for indemnity and contribution. There was no contract between Allegheny or the United States and the defendants. Moreover, it cannot be claimed that the defendants were the intended beneficiaries of any agreement between Allegheny and the United States.

■ Lastly, we agree with Allegheny and the United States that it was error for the district court to enter the order of January 5, 1973 dismissing all of the plaintiffs' complaints without prejudice, the exact opposite of what the parties had agreed to in settlement. Under the circumstances it was an abuse of discretion for the district court to effectively change the settlement from one providing for dismissal of plaintiffs' complaints with prejudice to one providing for the dismissal without prejudice.

Affirmed in part; reversed in part and remanded for a new trial pursuant to Circuit Rule 23.