EN EL TRIBUNAL SUPREMO DE PUERTO RICO

P.R. Fuels, Inc., et als.          *
                                   *
Recurridos                         *
                                   *
        v.                 *          CC-1996-173
                                   *
  Empire Gas Co., Inc., et         *
  als                      *
                                   *
      Peticionarios                *
***********************************
P.R. Fuels, Inc., et als.          *
                                   *
                Recurridos              *
                                   *
        v.                         *          CC-1996-184
Empire Gas Co. Inc., et als.       *
                                   *
      Peticionarios                *
***********************************

SENTENCIA

San Juan, Puerto Rico, a 2 de noviembre de 1999.

        Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente, revocamos la sentencia del Tribunal de Circuito de Apelaciones de 24 de abril de 1996 en cuanto resolvió que no existe en Puerto Rico un derecho de nivelación entre conspiradores o actores en una causa antimonopolística. Confirmamos dicha sentencia en cuanto determinó que no operó la confusión de derechos. Se devuelve el caso al tribunal de instancia para procedimientos compatibles con lo aquí resuelto.

        Lo acordó el Tribunal y certifica la Subsecretaria del Tribunal Supremo. Los Jueces Asociados señores Negrón García, Rebollo López y Fuster Berlingeri no intervinieron.

                                        Carmen E. Cruz Rivera
                                        Subsecretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

P.R. Fuels, Inc., et als.          *

```
                                          *
Recurridos                                *
                                          *
        v.                      *             CC-1996-173
                                *
   Empire Gas Co., Inc., et     *
   als                          *
                                *
        Peticionarios           *
*********************************
P.R. Fuels, Inc., et als.       *
                                *
                Recurridos                    *
                                *
        v.                      *             CC-1996-184
Empire Gas Co. Inc., et als.    *
                                *
        Peticionarios           *
*********************************
```

SENTENCIA


San Juan, Puerto Rico, a 2 de noviembre de 1999.


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente, revocamos la sentencia del Tribunal de Circuito de Apelaciones de 24 de abril de 1996 en cuanto resolvió que no existe en Puerto Rico un derecho de nivelación entre conspiradores o actores en una causa antimonopolística. Confirmamos dicha sentencia en cuanto determinó que no operó la confusión de derechos. Se devuelve el caso al tribunal de instancia para procedimientos compatibles con lo aquí resuelto.

Lo acordó el Tribunal y certifica la Subsecretaria del Tribunal Supremo. Los Jueces Asociados señores Negrón García, Rebollo López y Fuster Berlingeri no intervinieron.


                                    Carmen E. Cruz Rivera
                                    Subsecretaria del Tribunal Supremo



En el Tribunal Supremo de Puerto Rico


| P.R. Fuels, Inc. et als.<br>    Recurridos<br><br>    V.<br><br>Empire Gas Co., Inc. et als.<br>    Peticionarios | Certiorari<br><br>99 TSPR 168 |
| --- | --- |


Número del Caso: CC-1996-173 y cc-1996-184 Consolidados

Abogados de Empire Gas:          Lcdo. Manuel Fernández Mejías
                                 Lcdo. Fernando Pérez Colón
                                 Martínez, Odell & Calabria

Abogados de P.R. Fuels:          Lcdo. Javier Cuevas Silva
                                 Cancio, Nadal, Rivera & Díaz

Abogados de Progasco, Inc.:      Lcdo. Ramón E. Dapena
                                 Goldman, Antonetti & Córdova

Abogado de Asoc. Productores, Importadores, Mayoristas y Distribuidores
de Gas Propano, Inc.:            Lcdo. Francisco Martin Vélez

Abogados de Tropigas:            Lcdo. Héctor Reichard
                                 Lcda. Rebeca F. Rojas
                                 Reichard & Escalera

Abogada de Sta. Juanita Gas:  Lcda. Carmen J. Rivera

Abogado de Liquilux:             Lcdo. Charles Cuprill

Abogado de Asoc. De Distribuidores de Gas Liquado de Petróleo de P.R.,
Inc., Carlos Declet y Santurce Gas, Inc.:
                                 Lcdo. Luis E. Gervitz


Tribunal de Circuito de Apelaciones: Circuito Regional I

Juez Ponente: Hon. Héctor Urgell Cuevas

Fecha: 11/2/1999

Materia: Daños y Perjuicios


        Este documento constituye un documento oficial del Tribunal
        Supremo que está sujeto a los cambios y correciones del
        proceso de compilación y publicación oficial de las
        decisiones del Tribunal. Su distribución electrónica se hace
        como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| P.R. Fuels, Inc., et als. | * |
| | * |
| Recurridos | * |
| | * |
| v. | *  CC-1996-173 |
| | * |
| Empire Gas Co., Inc., et als | * |
| | * |
| | * |
| Peticionarios | * |

**********************************

| | |
|---|---|
| P.R. Fuels, Inc., et als. | * |
| | * |
| Recurridos | * |
| | * |
| v. | *  CC-1996-184 |
| Empire Gas Co. Inc., et als. | * |
| | * |
| Peticionarios | * |

**********************************

Opinión del Tribunal emitida por el Juez Asociado SEÑOR CORRADA DEL RÍO

San Juan, Puerto Rico, a 2 de noviembre de 1999.

La parte recurrida en este caso, P.R. Fuels Inc. y otras (en adelante "P.R. Fuels"), presentó demanda contra las peticionarias, Empire Gas Company, Inc. (en adelante "Empire"), Tropigas de Puerto Rico, Inc. (en adelante "Tropigas"), y Progasco y Liquilux, Inc. (en adelante "Liquilux"). La demanda se presentó al amparo de la Ley Núm. 77 del 25 de julio de 1964, 10 L.P.R.A. secs. 257 *et seq.,* (en adelante "Ley 77"), la cual prohíbe las prácticas monopolísticas.

A raíz de que P.R. Fuels desistiera de su reclamación en contra de Liquilux y adquiriera las acciones de esta empresa, las codemandadas presentaron una moción de desestimación basada en confusión de derechos, y en la alternativa, solicitaron que se decretara la existencia del derecho de nivelación entre las partes co-conspiradoras.

El extinto Tribunal Superior, Sala de San Juan, emitió Resolución el 3 de enero de 1995, notificada el 10 de enero de 1995, declarando sin lugar ambas solicitudes. Oportunamente las codemandadas Empire y

Tropigas, presentaron, separadamente, recursos de *certiorari* ante el Tribunal de Circuito de Apelaciones. El Tribunal de Circuito de Apelaciones, Circuito Regional de San Juan, Panel integrado por su Presidente, Juez Negrón Soto y por los Jueces González Román y Urgell Cuebas, luego de consolidar los recursos, confirmó la resolución luego de celebrar una vista oral, mediante sentencia de 24 de abril de 1996, notificada el 8 de mayo de 1996.

Inconformes con el dictamen, las peticionarias recurren separadamente ante nos aduciendo que el foro apelativo erró al determinar que no había operado la confusión de derechos y que el derecho de nivelación no existía en casos bajo la Ley 77.

Luego de consolidar y examinar los presentes recursos, confirmamos la sentencia del Tribunal de Circuito de Apelaciones a los efectos de que no procede la confusión de derechos. Revocamos el dictamen del foro apelativo en cuanto determinó que no aplica el derecho de nivelación entre conspiradores o actores bajo la Ley 77; resolvemos que en nuestra jurisdicción se puede invocar el derecho de nivelación en una reclamación bajo las leyes antimonopolísticas.

I

En junio de 1986, la co-demandante P.R. Fuels, adquirió el negocio operado por Martin Gas Sales, Inc. (en adelante "Martin"), que consistía principalmente, en un terminal marítimo en la Playa de Ponce dedicado a la importación y venta al por mayor de gas licuado. Alegadamente, luego de dicha adquisición, P.R. Fuels advino en conocimiento de un contrato que Martin había otorgado el 3 de diciembre de 1982, obligándose a pagar una regalía a Empire.[1] Además, sostuvo que Martin había otorgado otro contrato, el 27 de febrero de 1986, obligándose a venderle gas licuado a Empire y a Liquilux a un precio menor que a otras empresas y a limitar sus ventas en Puerto Rico a cuatro empresas, a saber: Empire, Liquilux, Progasco y Tropigas.

Debido al desconocimiento de estos contratos, P.R. Fuels se negó a continuar con los acuerdos establecidos entre Martin y las demás empresas aludidas, reclamando que los mismos eran contrarios a las leyes antimonopolísticas de Puerto Rico. Como resultado de ello, las co-demandadas descontinuaron la compra de gas licuado a P.R. Fuels, por lo que ésta, alegadamente, se quedó sin clientes. Ante tal situación P.R. Fuels creó la empresa, Gas del Pueblo, Inc. (en adelante "Gas del Pueblo"), para vender y distribuir a nivel de los consumidores el gas licuado que importaba.

El 19 de enero de 1987, P.R. Fuels, Gas del Pueblo y Norvest, Ltd.[2] instaron demanda contra Empire, Liquilux, Progasco y Tropigas, reclamando tres veces el importe de los daños sufridos por éstas. La demanda, según enmendada el 4 de noviembre de 1987, se presentó bajo la Ley 77, *supra*; bajo el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141; y bajo el Reglamento Sobre Competencia Justa Núm. VII de la Oficina de Asuntos Monopolísticos de Puerto Rico.

Las empresas demandantes-recurridas alegaron que, además de boicotear la compra del gas licuado de P.R. Fuels, las demandadas, en los primeros meses de 1987, desataron una campaña concertada para sacar del negocio de gas licuado a P.R. Fuels. Esta consistió en la instigación de inspecciones por los bomberos, la Junta de Calidad Ambiental y la Comisión de Servicio Público, además de la presentación de cuatro querellas, alegadamente frívolas, ante la Comisión de Servicio Público. Estas querellas resultaron en la imposición de sanciones, que posteriormente fueron revocadas a nivel judicial.

Las recurridas alegaron además, que para finales de 1986, las demandadas controlaban cerca del noventa y cinco porciento (95%) del mercado de gas licuado a nivel de distribuidor en la isla, y que existía

---

[1] La regalía consistía en pagar al Sr. Ramón González, Presidente de Empire, uno y medio centavos ($0.015) por cada galón de gas licuado que Martin transfiriera de un barco a cualquier localidad en Puerto Rico.
[2] Norvest, Ltd. es una empresa dedicada al transporte marítimo de gas licuado, y transportaba el producto al terminal de P.R. Fuels desde varios puntos en el exterior.

una confabulación entre éstas para mantener a un nivel artificialmente alto el precio del gas licuado en Puerto Rico.

Las demandantes solicitaron triples daños y perjuicios ascendentes a once millones setecientos mil dólares ($11,700,000.00), más un incremento de un millón setecientos mil dólares ($1,700,000.00) por cada mes que las demandadas continuaran las acciones en violación de ley, a partir de la presentación de la demanda.

Los procedimientos de la demanda civil fueron paralizados el 5 de junio de 1990 en lo que se ventilaban unas acusaciones criminales contra varias de las co-demandadas, bajo la misma Ley 77. Además, del 25 de enero de 1991 hasta el 21 de mayo de 1993, los procedimientos en instancia estuvieron paralizados en lo que este Tribunal consideraba un recurso de *certiorari* presentado por las demandantes. [3]

Estando paralizados los procedimientos ante el tribunal de instancia, el 15 de febrero de 1991, las demandantes y la co-demandada Liquilux, suscribieron una "Estipulación de Desistimiento Parcial con Perjuicio", la cual dispuso en parte: [4]

1. Que en base a un acuerdo mutuo y voluntario llegado entre las partes, éstas desisten entre sí de cualquier reclamación que tuviesen pasado (sic) o presente, y en particular del presente pleito.

2. Aclaran las partes, en particular la parte Demandante, que el presente desistimiento con perjuicio en cuanto a la Co-Demandada Liquilux Gas Corporation no debe entenderse que libere de responsabilidad a los restantes Demandados en este caso, ni que

---

[3] Petición de certiorari Núm. CE-90-796.

[4] La estipulación fue presentada ante este Tribunal y ante el tribunal de instancia. Este Tribunal, quien tenía jurisdicción sobre el caso en esos momentos, emitió resolución el 1ro. de marzo de 1991 dándose por enterado de la estipulación. El 21 de mayo de 1993 devolvimos el caso al

continúa...

[4]...continuación

tribunal de instancia mediante resolución declinando intervenir en esa etapa de los procedimientos. Véase: Resolución de 21 de mayo de 1993 en el caso Núm. CE-90-796.

constituya un desistimiento en cuanto a éstos, aun en el caso de que se considerase la obligación o cualquiera de las obligaciones de éstos bajo la reclamación incoada como una solidaria. Se aclara que el presente caso continúa con toda su fuerza y vigor en cuanto a los restantes Co-Demandados.

Luego de suscribir este acuerdo las demandantes adquirieron las acciones corporativas de Liquilux. A estos efectos, el 20 de marzo de 1991, el periódico El Nuevo Día publicó un anuncio suscrito por P.R. Fuels, Gas del Pueblo y Liquilux, con el título de "Gas del Pueblo, Inc. y Liquilux Gas Corporation Consolidan sus Operaciones de Gas Licuado en Puerto Rico". El 1ro. de diciembre de 1991, las juntas de directores de Gas del Pueblo y de Liquilux aprobaron un acuerdo de fusión, efectivo ese mismo día, bajo el cual sobrevivía Gas del Pueblo.[5] Este acuerdo fue certificado por el Secretario de la Junta el 28 de abril de 1992, y presentado al Departamento de Estado el 12 de mayo de 1992. El 26 de mayo de 1992 el Departamento de Estado notificó el recibo del Certificado de Fusión y la cancelación en sus récords de Liquilux.

Al conocer del desistimiento de la parte demandante contra Liquilux y de la compra de las acciones corporativas de Liquilux por las empresas demandantes, Empire presentó moción de desestimación a la cual eventualmente se unieron Progasco y Tropigas. Esta moción se basó en el argumento de que la consolidación de operaciones de Gas del Pueblo y Liquilux ocurrió con anterioridad o simultáneamente a la fecha del relevo entre estas partes. Alegaron que la verdadera intención de las partes al realizar el acuerdo de desistimiento no era un acuerdo entre dos entidades distintas, sino que ya se habían consolidado *de facto*. Amparados en esta teoría alegan que se activó la figura jurídica de confusión de derechos y que, dado que los co-causantes de un daño son solidariamente responsables, se extinguió la causa de acción contra todas las partes demandadas. En la

---

[5] Por un error tipográfico, la fecha indicada en la certificación del secretario de la junta de directores está incorrecta. Este error fue traído a la consideración del Tribunal de Circuito de Apelaciones en la vista oral que celebró, y como tal fue corregido.

alternativa alegaron que procedía como cuestión de derecho, que éstas ejercieran el derecho de nivelación en contra de Liquilux.

Por su parte las recurridas argumentaron que al darse el desistimiento, Liquilux era una persona jurídica independiente y en consecuencia, no existía relación de acreedor y deudor al momento de la fusión. Las demandantes sostienen además, que aún bajo la teoría de las demandadas, la fusión sólo afectaría la causa de acción de Gas del Pueblo, y quedarían activas las reclamaciones de P.R. Fuels y Norvest.

El 3 de enero de 1995, el tribunal de instancia emitió una resolución declarando no ha lugar las solicitudes de desestimación presentadas por Empire, Progasco y Tropigas. Determinó además, que no existía derecho a nivelación entre co-conspiradores bajo la Ley 77 y que por tanto no podían traer como tercera demandada a Liquilux. Las demandadas solicitaron reconsideración, la cual fue declarada no ha lugar. Oportunamente presentaron sendas peticiones de *certiorari* ante el Tribunal de Circuito de Apelaciones.

El 22 de mayo de 1995 el tribunal apelativo emitió resolución consolidando las peticiones de *certiorari* y expidió el auto. El 10 de enero de 1996, ese foro celebró una vista oral para que las partes pudieran poner en relieve sus argumentos y contestar ciertas interrogantes. El tribunal apelativo emitió sentencia el 24 de abril de 1996, notificada el 8 de mayo de 1996, confirmando la resolución del tribunal de instancia.

Inconformes, Empire y Tropigas presentaron oportunamente peticiones de *certiorari* por separado ante este Tribunal, junto con una "Moción en Auxilio de Jurisdicción". Las peticionarias alegan que el tribunal apelativo incidió al determinar que:

1. No operó la figura jurídica de extinción de la posible responsabilidad civil de los co-demandados frente a los co-demandantes por confusión de derechos, y

2. que en esta jurisdicción no existe un derecho de nivelación entre co-demandados en un caso bajo la Ley 77 y el artículo 1802 del Código Civil.

Presentados los recursos emitimos resolución el 19 de junio de 1996, expidiendo el auto de *certiorari* y ordenando la consolidación de ambas peticiones. Así también se ordenó la paralización de los procedimientos en el tribunal de instancia.

Teniendo el favor de la comparecencia de todas las partes procedemos a resolver.

## II

La confusión de derechos existe, según el artículo 1146 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3211, desde que se reúnen en una misma persona los conceptos de acreedor y deudor. Es requisito, por tanto, que exista una relación de deudor y acreedor entre las personas que se unen.

En el caso de las corporaciones, éstas son personas jurídicas, las cuales se crean, existen y se extinguen según lo dispone la Ley General de Corporaciones, 14 L.P.R.A. secs. 1101 *et seq.*[6] En cuanto a la consolidación o fusión de dos corporaciones, el artículo 901 de la Ley de Corporaciones, 14 L.P.R.A. sec. 1901, dispone que las juntas de directores de ambas corporaciones definirán y aprobarán los términos y condiciones de la fusión, los cuáles incorporarán en un convenio. Este será sometido para su aprobación a la junta de accionistas de cada corporación, y una vez aprobado, éste se certifica y autentica. Dicho convenio, una vez certificado y autenticado, se radica y registra en el Departamento de Estado.

El acto de radicar y registrar el convenio en el Departamento de Estado tiene el efecto de extinguir la personalidad jurídica de la corporación absorbida. Así, el artículo 903 de la Ley de Corporaciones, 14 L.P.R.A. sec. 1903, dispone en parte:

> Cuando el convenio de consolidación o fusión se hubiere **firmado, autenticado, radicado y registrado** con arreglo a los requisitos de este subtítulo, para todos los efectos de las leyes del Estado Libre Asociado se **extinguirá la personalidad jurídica** aislada de todas las corporaciones

---

[6] La Ley General de Corporaciones se enmendó en agosto de 1995, por lo cual resolvemos la presente controversia a la luz de las disposiciones vigentes al momento de ocurrir los hechos en este caso.

constituyentes que fueren partes en el convenio, salvo la de la que hubiere absorbido por fusión a la otra u otras, según el caso; y las corporaciones constituyentes pasarán a ser una nueva corporación, o serán absorbidas en la fusión por una de tales corporaciones, según el caso, con arreglo a las disposiciones de tal convenio;.(Enfasis nuestro).

Queda claro entonces, que la existencia separada de las dos corporaciones cesa, *de jure*, cuando se radica y registra el convenio de fusión en el Departamento de Estado. En el caso ante nos, el convenio de fusión fue presentado y registrado en el Departamento de Estado el 12 de mayo de 1992. Es en esta fecha que la personalidad jurídica de Liquilux cesó.

Las peticionarias reclaman que es al momento en que Gas del Pueblo adquiere las acciones corporativas de Liquilux que cesa la existencia independiente de ésta. O sea, reclaman que en ese momento ocurre una fusión *de facto*, a la cual debemos darle todos los efectos que conlleva la fusión *de jure*, incluyendo la confusión de derechos entre Gas del Pueblo y Liquilux. No nos persuaden.

La doctrina jurídica no acepta que la mera posesión de todas las acciones de una corporación por otra corporación, o el que ambas corporaciones tengan los mismos accionistas, sea suficiente para destruir la personalidad jurídica separada de las corporaciones envueltas. El Secretario de Justicia en su Opinión Núm. 43 de 1963, ha señalado que el hecho escueto de que una corporación posea todas las acciones de otra corporación, de por sí, no implica una fusión de dos corporaciones, ni significa que una corporación sea el *alter ego* de la otra.[7]

---

[7] *Véase*: 15 Fletcher Cyc Corp, §7046, 38 (Perm Ed) (1990), donde se indica:

> "But a purchase by a corporation of part or all the shares of stock of another company does not ordinarily constitute a merger or consolidation in the strict sense of those terms, so there is no merger or consolidation merely because the stockholders of two corporations are largely or wholly the same, nor because one corporation exercises a controlling
>
> continúa...

[7]...continuación

La doctrina de fusión *de facto* carece de arraigo entre diversas jurisdicciones estatales, en algunas es inaplicable y en otras ha sido severamente restringida y limitada.[8] Esta doctrina se formuló con el propósito fundamental de proteger los intereses de los accionistas que estaban en desacuerdo con la transacción.[9] Dicha doctrina, no tiene pues el objetivo de aplicarse a casos como éste, tal cual como solicitan las peticionarias.

Como indicáramos anteriormente, la Ley de Corporaciones, en su Art. 903, *supra,* dispone que la fusión de una corporación con otra sólo entrará en vigor cuando se registre en el Departamento de Estado el convenio; es en este momento que cesa la personalidad jurídica de la corporación absorbida.

Ante la letra clara de la ley, debemos seguir el principio jurídico plasmado en el Art. 14 de nuestro Código Civil, 31 L.P.R.A. sec. 14, de que "cuando la ley es clara [y] libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu." Particularmente cuando la disposición en cuestión, no sólo está libre de toda ambigüedad, sino que además, tiene un claro sentido jurídico como sucede con el artículo antes citado.

En el caso de *Merle v. West Bend Co.*, 97 D.P.R. 403 (1969), resolvimos que un relevo o descargo otorgado por un demandante a favor de un codemandado y codeudor solidario no releva de responsabilidad a los demás causantes comunes de un daño, cuando la intención de las partes en el acuerdo de desistimiento así lo dispone.

En *Merle, supra,* los demandados alegaron, al igual que los codemandados en el presente caso, que siendo la responsabilidad entre ellos solidaria, y que, habiéndose relevado de responsabilidad a uno de

---

influence over the other through the ownership of its stock or through the identity of its stockholders". (Citas Omitidas).

[8] 15 Fletcher Cyc Corp, §7045.10, 35 (Perm Ed) (1990).

[9] *Id.*

los demandados, tal relevo beneficiaba a los codemandados; por lo que procedía la desestimación de la demanda contra ellos.

En aquella ocasión hicimos énfasis en tomar como determinante la intención de las partes en el relevo del causante común de un daño, guiándonos por las disposiciones del artículo 1233 de nuestro Código Civil, 31 L.P.R.A. sec. 3471, el cual dispone:

> Si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas.
>
> Si las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá ésta sobre aquéllas.

En el caso ante nos, Gas del Pueblo y Liquilux acordaron una estipulación en la cual desistían entre sí de cualquier reclamación que tuviesen pasada, presente y en particular del presente pleito y **aclararon que este desistimiento no debía entenderse que liberaba de responsabilidad a los restantes demandados en este caso**; y que **tampoco constituía un desistimiento en cuanto a éstos, aun en el caso de que se considerase la obligación o cualquiera de las obligaciones de éstos bajo la reclamación incoada como una solidaria.** Se aclaró también que el presente caso continuaba con toda su fuerza y vigor en cuanto a los restantes codemandados.

Resulta obvio que Gas del Pueblo acordó desistir el pleito, pero sólo a favor de Liquilux. Además, se desprende con claridad que no existía la intención de relevar a los demás codemandados de su responsabilidad para con las demandantes.

Ante la letra clara de este acuerdo de desistimiento a favor de la codemandada Liquilux, y a la luz de lo que resolvimos en *Merle* v. *West Bend Co., supra*, concluimos que no operó la figura de confusión de derechos entre Gas del Pueblo y Liquilux. Por lo tanto confirmamos la determinación del Tribunal de Circuito de Apelaciones al sostener el dictamen del Tribunal de Primera Instancia declarando no ha lugar las mociones de desestimación fundamentadas en este reclamo.

III

El segundo error señalado plantea si en esta jurisdicción existe un derecho de nivelación entre conspiradores o actores en un caso bajo la Ley 77, y bajo el artículo 1802 de nuestro Código Civil, *supra*.

La Ley 77, *supra*, no contiene disposición alguna a los efectos de prohibir o autorizar la acción nivelatoria en un caso como el presente. Por otro lado, nos encontramos ante un asunto novel ya que este Tribunal no se ha expresado sobre este asunto anteriormente.

Ante esta situación, tenemos que tomar en consideración que nuestra legislación antimonopolística se adoptó en 1964 a la luz de la Ley Sherman[10] y de la Ley Clayton.[11] Estos estatutos federales regulan y prohiben las prácticas monopolísticas desde su aprobación en 1890 y 1914 respectivamente.

Por lo tanto, nos toca determinar si aplicamos directamente lo resuelto por el Tribunal Supremo federal a los efectos de que no existe el derecho de nivelación entre conspiradores o actores en un litigio antimonopolístico; o si por el contrario aplicamos supletoriamente nuestras disposiciones sobre el derecho de nivelación entre co-coausantes de un daño a la presente controversia.

Para poder determinar si el derecho de nivelación existe en una reclamación bajo la Ley 77, es necesario examinar dicha ley, así como su historial legislativo y los principios ilustrativos que se puedan hallar en la jurisprudencia federal interpretativa de los estatutos federales análogos.

Para llevar a cabo esta tarea es menester tener presente las reglas para la interpretación de legislación adoptada de otras jurisdicciones, según se infieren de interpretaciones hechas por este Tribunal. Veamos.

1.    Cuando un estatuto es copiado o adoptado de una ley extranjera o de otra jurisdicción, se presume que se adopta con la interpretación que se le ha dado hasta ese momento en la jurisdicción de donde procede; pero esta doctrina no es tan inflexible

---

[10] 15 U.S.C.A. §§1-7.

[11] 15 U.S.C.A. §§12-27.

como para obligar a seguir ciegamente lo resuelto por esos tribunales.

2.    Es permisible acudir al Common Law cuando ello es necesario para las interpretaciones de normas de origen anglo-estadounidense,...en cuyo caso el tribunal puede escoger otra norma, extranjera o de confección propia, que considere más equitativa.

3.    Las decisiones de los tribunales de la jurisdicción de donde se adopta una ley, emitidas con posterioridad a su adopción en Puerto Rico, o por tribunales de otras jurisdicciones, aunque no obligan al Tribunal Supremo de Puerto Rico tienen fuerza persuasiva para el mismo.[12]

Según estas normas de interpretación, las decisiones de los tribunales de la jurisdicción en que se origina la legislación a interpretar son de carácter persuasivo, pero nunca obligatorio.  Es decir, se puede tomar como referencia, pero no se debe seguir ciegamente lo resuelto por esos tribunales, sino que el tribunal, si así lo considera propio, debe escoger las normas de confección propia que considere más equitativa, pudiendo expandir los derechos garantizados en la jurisdicción de origen.

Utilizando estos criterios como guía para resolver la controversia ante nos, consideraremos inicialmente el historial legislativo de la Ley 77, según lo discutiéramos en *Pressure Vessels* v. *Empire Gas*, op. de 23 de noviembre de 1994, 137 D.P.R. __ (1994), 94 J.T.S. 144.

Allí expresamos que fue intención de la Asamblea Legislativa que la Ley 77, *supra*, se interprete conforme a nuestra particular realidad económica y social.  Como uno de los objetivos fundamentales de la ley se cita el siguiente:

> Proveer una base flexible para la propia ejecución de la ley, basada en una norma de razonabilidad que permita a nuestros tribunales tomar en cuenta las características propias y las necesidades de nuestra economía, así como los planes gubernamentales y la acción privada para fomentarla; es decir, **queda abierta la función creadora en la aplicación de la ley, tanto en la rama ejecutiva como en la judicial en sentido favorable a nuestro desarrollo económico, aún en el caso de disposiciones con precedentes en la**

---

[12]  R. Elfren Bernier y J.A. Cuevas Segarra, Aprobación e Interpretación de las Leyes en Puerto Rico, 2da. Ed., Publicaciones J.T.S., págs. 451-454 (1987).

**legislación de los Estados Unidos.** *Pressure Vessels, supra.*[13] (Enfasis nuestro).

Con esto en mente tenemos que considerar –a pesar de las decisiones federales que descartan el derecho de nivelación en reclamaciones bajo las leyes antimonopolísticas federales– los factores particulares a nuestra realidad económica y social que ameriten la aplicación de nuestro derecho de nivelación a reclamaciones bajo la Ley 77. Esto a la luz de

la intención de la legislatura de que quede abierta la función creadora en la aplicación de la ley en sentido favorable a nuestro desarrollo económico, aún en el caso de disposiciones con precedentes en la legislación de Estados Unidos.

Aun así, resulta importante estudiar la jurisprudencia federal existente a estos efectos para evaluar los fundamentos legales utilizados para resolver de la forma en que se ha hecho, y determinar si existe algún propósito en las leyes antimonopolísticas que sea óbice para la aplicación del derecho de nivelación entre co-conspiradores en casos bajo la Ley 77.

El Tribunal Supremo de Estados Unidos resolvió que bajo la legislación antimonopolística federal no existe el derecho de nivelación entre co-conspiradores. *Texas Industries Inc.* v. *Ratclif Materials, Inc.*, 451 U.S. 630 (1981). En este caso se adoptó esta norma luego del Tribunal Supremo federal haber realizado un extenso análisis, a saber: (1) si la intención legislativa del Congreso al aprobar las leyes antimonopolísticas contempló el que se permitiera la acción niveladora entre los co-causantes de un daño por violación a dicha legislación; (2) si el denominado "derecho común federal" constituye una fuente de la cual pueda el Tribunal inferir la existencia de una causa de acción niveladora a favor de los co-causantes de un daño.

---

[13] *Véase:* Informe conjunto de las Comisiones de lo Jurídico, de Hacienda y de Comercio e Industria, Diario de Sesiones, Asamblea Legislativa (Cámara), 11 de mayo de 1964, págs. 1425-26.

Utilizando este análisis el Tribunal Supremo federal concluyó que en el historial legislativo de la legislación federal no hay indicio que permita la inferencia de que el Congreso tuvo en mente permitir la procedencia de la acción nivelatoria entre los co-conspiradores. En cuanto a la segunda parte del análisis, el Tribunal determinó que el mero hecho de que exista una base jurisdiccional que le permita a los tribunales federales implementar y hacer valer las leyes del Congreso, ello no significa que se haya extendido a estos tribunales la potestad de forjar su propio derecho común en la tradición del derecho anglosajón.

Es patente que el análisis realizado por el Tribunal Supremo federal en *Texas Industries, supra*, estuvo basado en la falta de poder de dicho tribunal para decidir la cuestión a falta de un mandato legislativo claro. Esto resulta importante al estudiar la expresión del Tribunal al respecto de que al denegar el derecho a nivelación en causas bajo las leyes antimonopolísticas federales no estaba rechazando la validez del ejercicio de tal derecho en dicha acción. Reconoció que, a pesar de los méritos de este reclamo, este es un asunto que le compete resolver al Congreso y no a los tribunales federales. *Texas Industries, supra*, a la pág. 646.

A pesar de que resuelve de esta forma, el Tribunal Supremo federal admite que del historial legislativo de las leyes antimonopolísticas federales no surge que el Congreso tuviera la intención de conceder el derecho de nivelación  ya que para la fecha en que se aprobó la Ley Sherman, el derecho común no concedía este derecho entre los co-causantes de un daño.

Son otros los factores que han tomado en consideración las cortes federales para decidir que no existe un derecho de contribución en casos bajo las leyes antimonopolísticas. Así, se han tomado en cuenta consideraciones de política pública, a saber:  se afectaría el control del demandante del caso; se complicaría aún más el trámite del caso; el efecto disuasivo de las leyes antimonopolísticas resalta al no existir el derecho de nivelación.  47 A.L.R. Fed. 712, 714 (1980).

A pesar de esta decisión, debemos aclarar que existen otros tribunales federales y estatales que han estado dispuestos a formular reglas para ejercer el derecho a nivelación en otras áreas del derecho sin un mandato congresional expreso.[14]

IV

Habiendo realizado un análisis de la legislación antimonopolística federal y de la interpretación que se ha hecho de la misma en cuanto al derecho de nivelación no

encontramos propósito alguno en dicha legislación que impida conceder el derecho de nivelación a la luz de nuestro derecho. Más aún, de nuestro estudio no surge que exista algún fin en las acciones antimonopolísticas que se vea afectado de alguna manera al conceder el derecho de nivelación entre actores o conspiradores. Por lo tanto,

procede que evaluemos si debemos aplicar el derecho de nivelación que existe en nuestra jurisdicción a los litigios que se presenten al amparo de la Ley 77. Veamos.

Según expresáramos anteriormente, la Ley 77 es silente en cuanto a la responsabilidad que puedan tener los demandados con respecto a la participación respectiva de cada uno. Específicamente, no surge de dicha legislación si existirá o no el derecho de nivelación entre éstos, en la eventualidad de que uno tenga que responder por una cantidad mayor a la que le corresponde.

Ante esta laguna nos corresponde seguir el principio establecido por el Artículo 12 del Código Civil, 31 L.P.R.A. sec. 12, de que las deficiencias o insuficiencias de las leyes especiales serán suplidas por las disposiciones del Código Civil, o por otras leyes *in pari materia*.

---

[14] Véase: *U.S.* v. *Valentine*, 856 F. Supp. 627 (1994), permitió el derecho de nivelación bajo RCRA (Resource Conservation and Recovery Act); *Chemung Canal Trust Co.* v. *Sovran Bank of Maryland*, 939 F. 2d 12 (1991), permitió el derecho de nivelación bajo ERISA (Employee Retirement Income Security Act); *Kohr* v. *Allegheny Airlines, Inc.*, 504 F2d. 400 (7th Cir. 1974), permitió el derecho de nivelación en casos de accidentes aéreos; *Grogg* v. *General Motors*, 72 F.R.D. 523 (S.D.N.Y. 1976), permitió la nivelación en casos de discrimen en el empleo; *Globus, Inc.* v. *Law Research Serv., Inc.*, 318 F.Supp. 955 (S.D.N.Y. 1970), permitió la nivelación en casos de fraude de valores.

Así lo hemos establecido reiteradamente. *Véase: Paine Webber, Inc.* v. *First Boston, Inc.,* op. de 30 de junio de 1994, 136 D.P.R. __ (1994), 94 J.T.S. 98. Lo que significa que en nuestra jurisdicción existe un cuerpo de derecho armónico que no puede obviarse al encontrarnos ante deficiencias que surjan de las leyes especiales. Además, la norma en cuanto al derecho de nivelación en general, es que éste es un derecho sustantivo y por lo tanto está gobernado por las leyes del lugar en que ocurre el daño.[15]

En Puerto Rico el derecho de nivelación entre co-causantes de un daño existe desde que resolvimos *García* v. *Gobierno de la Capital*, 72 D.P.R. 138 (1951). La norma en este sentido es que cuando un daño es causado por dos o más personas, todos los co-causantes responderán al demandante por los daños causados y que su responsabilidad será solidaria. Entre estos co-causantes existe un derecho de contribución o nivelación que procede del artículo 1098 del Código Civil, 31 L.P.R.A. sec. 3109, el cual permite que el deudor solidario que pagó más de lo que correspondía reclame las porciones correspondientes a los demás co-deudores solidarios. *Security Ins. Co.* v. *Tribunal Superior*, 101 D.P.R. 191 (1973). Esto es lo que se conoce como nivelación o contribución. [16]

El propósito fundamental del derecho de nivelación en Puerto Rico ha sido el de evitar el enriquecimiento injusto, según lo expresamos en *Ramos v. Caparra Dairy*, 116 D.P.R. 60, 64 (1985):

> [...]Se trata en realidad de evitar situaciones de enriquecimiento injusto, reconduciendo subjetivamente la carga prestacional hacia quienes, en último término, corresponda.

---

[15] 18 Am. Jur. 2d §57, 2d ed., pág. 62 (1985). *Véase: Caterpillar Tractor Co.,* v. *Teledyne Industries, Inc.*, 126 Cal. Rptr. 455 (1976).

[16] La solidaridad entre co-conspiradores en una causa bajo la legislación antimonopolística no está en controversia en el presente caso. Además, el principio de responsabilidad solidaria entre co-conspiradores en casos bajo las leyes antimonopolíticas fue creado por *fiat* judicial, y el mismo ha permanecido prácticamente incontrovertido desde su creación hace más de noventa años. *Véase*: Edward D. Cavanagh, *Contribution, Claim Reduction, and Individual Treble Damage Responsibility: Which Path to Reform of Antitrust Remedies?,* 40 Van. Law. Rev. 1277, 1279 (1987); *City of Atlanta* v. *Chattanooga Foundry*, 203 U.S. 390 (1906).

El derecho a la nivelación se basa principalmente en la equidad, toda vez que resulta completamente injusto que siendo dos o más personas las causantes de un daño, se permita que el demandante por razón de parentesco, amistad, por colusión, o por cualquier motivo, releve a éstas de responsabilidad y dirija la acción exclusivamente contra otros. *García* v. *Gobierno de la Capital, supra.*

Para que entre en vigor el derecho de nivelación en materia de responsabilidad extra-contractual no hace falta estatuto al efecto. *Monserrate Arroyo* v. *Hospital la Concepción*, 130 D.P.R. 596 (1992). Así lo hemos adoptado a pesar de que la norma de la ley común inglesa prevaleciente en Estados Unidos y la jurisprudencia federal ha sido la de no reconocer en ausencia de legislación el derecho de que un cocausante contribuya al pago de la indemnización. *Cortijo Walker* v. *Fuentes Fluviales*, 91 D.P.R. 574 (1964).

V

En el caso ante nos, tenemos que la Ley 77 fue adoptada a la luz de la legislación federal sobre esta materia y que en ambas legislaciones existe una laguna en cuanto a la aplicación del derecho de nivelación entre co-conspiradores en una causa de acción antimonopolística. En vista de esta laguna se ha hecho necesario interpretar dicha legislación, junto a su historial legislativo y a las interpretaciones hechas por los tribunales federales para concluir que en reclamaciones bajo la Ley 77 existe el derecho de nivelación entre los co-conspiradores.

Resolvemos hoy de esta forma ya que, como expusiéramos anteriormente, uno de los objetivos fundamentales de dicha ley fue que se interpretara flexiblemente de manera que los tribunales pudiéramos ejercer nuestra función creadora en su aplicación, aún en el caso de disposiciones con precedentes en la legislación de Estados Unidos. *Pressure Vessels, supra.*

En la presente controversia, tanto el tribunal de instancia como el tribunal apelativo aplicaron mecánicamente las determinaciones hechas por los tribunales federales a los efectos de no conceder el derecho de

nivelación en los casos bajo la legislación antimonopolística. Se basaron principalmente en la doctrina de interpretación de que cuando un estatuto es copiado o adoptado de una ley de otra jurisdicción, se presume que se adopta con la interpretación que se le ha dado en los tribunales de la jurisdicción de donde procede. Sin embargo, y aunque reconocen que esta norma es de carácter persuasivo y no obligatorio, adoptaron la interpretación federal obviando el hecho de que los tribunales están facultados para escoger normas de confección propia e incluso expandir los derechos garantizados en la esfera federal.

El tribunal apelativo analizó el caso de *Pressure Vessels, supra,* y concluyó que al allí haber recurrido a las interpretaciones federales de la Ley de Monopolios, *supra,* este Tribunal aprobó implícitamente dichas interpretaciones sin indicar excepciones particulares a la ley de Puerto Rico. De esta manera justifica la aplicación directa de *Texas Industries, supra,* al caso de marras.

No obstante, esta interpretación que hace el tribunal apelativo es incorrecta, ya que en *Pressure Vessels, supra*, aunque citamos jurisprudencia federal a manera ilustrativa en relación a la Ley 77, también acudimos a nuestra doctrina civilista y resolvimos al amparo de nuestro ordenamiento procesal civil y del artículo 1802.

Resulta importante recalcar, que ante una legislación local adoptada de otra jurisdicción, que no cuente con jurisprudencia interpretativa de este Tribunal, los tribunales pueden acudir a la esfera federal para ilustrarse sobre el derecho allí vigente. No obstante, no deben aplicar ciegamente la doctrina interpretativa de estos tribunales.

Además, deben tener presente los fundamentos por los cuales los tribunales federales han interpretado una legislación de cierta manera. En lo que concierne al presente caso, el Tribunal Supremo federal reconoció en *Texas Industries, supra*, que no rechazaba la validez del ejercicio del derecho a nivelación en casos antimonopolísticos. Además admite que una posible explicación para que el Congreso no hubiera otorgado este derecho es que para la fecha de aprobación de la Ley

Sherman y de la Ley Clayton, *infra*, el derecho común no proveía el derecho a nivelación. *Texas Industries, supra,* a la pág. 510, nota 17.

En el caso de Puerto Rico la situación es diametralmente diferente. Nuestro sistema está sustentado por el derecho civil, y hemos garantizado el derecho de nivelación en casos extra-contractuales desde que resolvimos *García* v. *Gobierno de la Capital, supra,* en el año 1951. A diferencia del Congreso federal, nuestra legislatura conocía la existencia de este derecho al momento de aprobar la Ley 77 en el año 1964, y nada dispuso para que dicho derecho no pudiera ejercerse. A esto se añade que para que tome vigencia el derecho de nivelación en materia de daños, no hace falta estatuto al efecto. *Monserrate Arroyo* v. *Hospital la Concepción, supra.*

Más importante resulta el hecho de que la decisión en *Texas Industries, supra,* no representa un obstáculo para que los estados de la Unión en los Estados Unidos apliquen el derecho de nivelación entre conspiradores o actores en casos antimonopolísticos. Así, los tratadistas han expresado:

> State antitrust laws generally do not address the subject of contribution, but state common law or general statutory provisions, providing for contribution among joint tortfeasors, may entitle a defendant to contribution under certain circumstances.[17]

En vista de los asuntos discutidos particulares a nuestra jurisdicción, reconocemos hoy el derecho de los co-conspiradores o actores en una causa bajo la legislación antimonopolística, de manera que éstos puedan ejercer el derecho de nivelación en los casos que se presenten bajo la Ley 77. Esto así, ya que este foro, como árbitro final de las controversias locales, debe adoptar las normas que sean más justas, razonables y equitativas, conforme a nuestra idiosincracia, y rechazar una regla de otra jurisdicción, por ilustrativa y persuasiva que sea, que conflija con nuestra tradición jurídica o que choque con nuestro

---

[17] ABA Antitrust Section, *Antitrust Law Developments,* 3rd. Ed., a la pág. 639 (1992).

sentido de justicia. *Ojeda* v. *El Vocero*, op. del 26 de octubre de 1994, 137 D.P.R. __ (1994), 94 J.T.S. 131.

Por lo tanto, determinamos que las peticionarias Empire y Tropigas tienen derecho a nivelar contra Liquilux, siempre y cuando se determine en un juicio plenario si dichas empresas, incluyendo a Liquilux, incurrieron o no en violaciones a la Ley 77. Esto así, a pesar de que P.R. Fuels desistió de su reclamación en contra de Liquilux, ya que es claro que dicho convenio no puede perjudicar la responsabilidad que Liquilux pudiese tener para con los demás demandados, en caso de determinarse que incurrieron en prácticas ilícitas de la competencia. *Merle v. West Bend, Co., supra.*[18]

Al así resolver, se enfatiza el efecto disuasivo de la Ley 77, al reducir la posibilidad de que un violador de esta legislación pueda escapar el castigo que merece la conducta proscrita. Así también se evita el dirigir toda la responsabilidad económica hacia un co-demandado, lo cual podría sacarle del mercado por lo oneroso de los daños triples que concede nuestra legislación antimonopolística. Avalar esta situación y concluir que un demandado está impedido de ejercer el derecho de nivelación contra otros conspiradores o actores, sería claramente contrario al motivo fundamental de la Ley 77 que es proteger la libre competencia y proscribir males que amenazan la economía general.[19]

---

[18] En ese caso estuvimos ante una reclamación bajo la Ley de Contratos de Distribución, Ley Núm. 75 de 24 de junio de 1964, 10 L.P.R.A. §§278 *et seq.*, y bajo el Art. 1802 del Código Civil, 31 L.P.R.A. §5141. En una situación muy similar

continúa...

[18]...continuación

a la presente, el demandante celebró un contrato de transacción con uno de los demandados, desistiendo de la reclamación en contra de éste. En ese contexto fue que expresamos que el convenio no tenía el efecto de perjudicar la responsabilidad que este último pudiera tener para con los demás codemandados de determinarse que dicha responsabilidad resultara ser solidaria.

[19] Exposición de Motivos, Ley de Monopolios, *supra.*

Por último, se evita el enriquecimiento injusto de una parte que contribuyó al daño causado al demandante mediante conducta violatoria de nuestra legislación antimonopolística. Resolver en contrario avalaría la injusticia de que un actor o conspirador cargue con un peso desproporcionado en relación al

daño que ocasionó junto a otros; estos últimos quedando liberados de su responsabilidad por el hecho de no existir el derecho de nivelación.

Por todos los fundamentos expuestos con anterioridad revocamos la sentencia del Tribunal de Circuito de Apelaciones en cuanto resolvió que no existe en Puerto Rico un derecho de nivelación entre conspiradores o actores en una causa instada bajo la Ley 77, y confirmamos en cuanto determinó que no operó la confusión de derechos. Se devuelve el caso al tribunal de instancia para procedimientos compatibles con lo aquí resuelto.

Se dictará la sentencia correspondiente.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

P.R. Fuels, Inc., et als.          *
                                   *
Recurridos                         *
                                   *
        v.                  *         CC-1996-173
                            *
   Empire Gas Co., Inc., et   *
   als                   *
                         *
      Peticionarios         *
***********************************
P.R. Fuels, Inc., et als.          *
                                   *
                 Recurridos              *
                            *
        v.                  *         CC-1996-184
Empire Gas Co. Inc., et als.   *
                            *
      Peticionarios         *
*********************************

SENTENCIA

San Juan, Puerto Rico, a 2 de noviembre de 1999.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente, revocamos la sentencia del Tribunal de Circuito de Apelaciones de 24 de abril de 1996 en cuanto resolvió que no existe en Puerto Rico un derecho de nivelación entre conspiradores o actores en una causa antimonopolística. Confirmamos dicha sentencia en cuanto determinó que no operó la confusión de derechos. Se devuelve el caso al tribunal de instancia para procedimientos compatibles con lo aquí resuelto.

Lo acordó el Tribunal y certifica la Subsecretaria del Tribunal Supremo. Los Jueces Asociados señores Negrón García, Rebollo López y Fuster Berlingeri no intervinieron.


Carmen E. Cruz Rivera
Subsecretaria del Tribunal Supremo



BALTASAR CORRADA DEL RÍO
JUEZ ASOCIADO