El Juez Asociado Señor Kolthoff Caraballo
emitió la opinión del Tribunal.
En esta ocasión la controversia que nos ocupa es relati-vamente sencilla: ¿tiene legitimación activa una persona privada, detallista de gasolina, para presentar una causa de acción ante el Tribunal de Primera Instancia contra un distribuidor-mayorista de ese producto por alegadas viola-ciones a las disposiciones relativas al deber de desvincula-ción operacional que establece el Art. 4A de la Ley de Control de Productores, Refinadores y Distribuidores-Mayoristas de Gasolina?(1) Al atender tal interrogante, interpretamos por primera vez de forma conjunta dos esta-tutos que regulan la competencia en el mercado de la ga-solina, a saber: la Ley de Control de Productores, Refina-dores y Distribuidores-Mayoristas de Gasolina, Ley Núm. 3 de 21 de marzo de 1978, según enmendada, 23 L.P.R.A. sec. 1101 et seq. (Ley de Gasolina), y la Ley de Monopolios *909 y Restricción del Comercio, Ley Núm. 77 de 25 de junio de 1964, según enmendada, 10 L.RR.A sec. 257 et seq. (Ley de Monopolios).
I
La peticionaria Esso Standard Oil Company (la peticio-naria o Esso) es una corporación dedicada a la importación, distribución y venta de gasolina al por mayor, o sea, un distribuidor-mayorista.(2) Por su parte, las recurridas Aguadilla Paint Center, Inc., y CB Gasoline Service Group, Inc. (las recurridas) son detallistas,(3) o sea, vendedores al detal de gasolina, en este caso gasolina importada, distri-buida y vendida por la peticionaria Esso (detallistas de marca).
Para agosto de 2004, las recurridas presentaron una de-manda ante el tribunal de instancia en la que imputaron a la peticionaria Esso, inter alia, incurrir en la práctica de vinculación operacional, en contravención al Art. 4A de la Ley de Gasolina, supra, y al Art. 7 de la Ley de Monopolios.(4) Además, solicitaron resarcimiento en daños y perjuicios, según el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141.
Luego de múltiples incidentes procesales,(5) el 12 de marzo de 2010, Esso solicitó la desestimación de la de- *910 manda al amparo de la Regla 10.2 de Procedimiento Civil.(6) En su moción, Esso argumentó básicamente que la causa de acción de las recurridas, fundada en la obligación de “desvinculación operational” que establece el Art. 4A de la Ley de Gasolina, supra, debía ser desestimada porque el Art. 8 de la Ley de Gasolina, 23 L.P.R.A. sec. 1108, esta-blece que una violación al Art. 4A “constituirá una práctica o acto injusto o engañoso y estará sujeto a las disposiciones de las secs. 257 et seq.” de la Ley de Monopolios, supra.
El tribunal de instancia declaró “no ha lugar” la solici-tud de desestimación de Esso al concluir “que un ente pri-vado como la demandante puede presentar una acción al amparo del Artículo 7 de la [Ley de Gasolina, 23 L.P.R.A. Sec. 1107] sobre competencia en el mercado de gasolina, ante el Tribunal de Primera Instancia”.(7) Inconforme, Esso recurrió ante el Tribunal de Apelaciones mediante re-curso de certiorari. Dicho foro concluyó que, luego de un análisis ponderado del recurso presentado y los documen-tos que obraban en el expediente, Esso no lo había colocado en condiciones de conceder el remedio solicitado y que el dictamen recurrido no ameritaba su intervención en esa etapa procesal.
Ante tal dictamen, Esso acudió ante esta Curia me-diante recurso de certiorari esbozando los siguientes seña-lamientos de error:
Erró el Tribunal de Apelaciones al no expedir el auto solicitado y no reconocer que el Art. 12(a) de la Ley de Monopolios ex-cluye demandas privadas por alegada vinculación operacional bajo el Art. 4A de la Ley de Gasolina.
Erró el Tribunal de Apelaciones al no expedir el auto solicitado y no ordenar la desestimación de la reclamación bajo el Art. 4A de la Ley de Gasolina, ya que los demandantes no tienen legitimación activa para incoarla y, por lo tanto, el Tribunal de Primera Instancia carece de jurisdicción sobre la materia para atenderla.
*911 Erró el Tribunal de Apelaciones al determinar que Esso no lo colocó en “condiciones de conceder el remedio solicitado”, ya que se cumplen los criterios para la expedición del auto conte-nidos en la Regla 40 del Reglamento del Tribunal de Apelaciones. Petición de certiorari, pág. 8.
Expedido el certiorari, paralizamos los procedimientos y ordenamos a las partes presentar sus correspondientes alegatos.(8) Con el beneficio de la posición de todas las par-tes, resolvemos.
II
A. Ley de Control de Productores, Refinadores y Distri-buidores-Mayoristas de Gasolina
Según surge de su Exposición de Motivos, la aprobación de la Ley de Control de Productores, Refinadores y Distribuidores-Mayoristas de Gasolina, Ley Núm. 3 de 21 de marzo de 1978, según enmendada, 23 L.P.R.A. sec. 1101 et seq., tuvo como propósito —entre otros— combatir el problema “que representa el que el control de los abastos de productos energéticos y, en especial, la gasolina y otros combustibles derivados del petróleo y del gas natural, continúe concentrándose en las manos de unos pocos que dominan todos los aspectos relacionados con la producción, refinación y mercadeo de estos productos”.(9) De manera que el legislador buscó eliminar las ventajas competitivas existentes en el mercado de la gasolina o combustibles especiales de motor, así como disponer sobre la supervisión de ese proceso y establecer medidas para el cumplimiento de los propósitos perseguidos por dicho estatuto. De *912 acuerdo con este fin, el legislador tipificó delitos y fijó pe-nalidades a los infractores del estatuto.
De esta manera, la Asamblea Legislativa determinó que, ante la falta de uniformidad competitiva, era necesa-rio instituir salvaguardas minuciosas que impidieran las actuaciones de las compañías petroleras y distribuidoras de productos energéticos dirigidas a monopolizar los pun-tos de distribución pública de gasolina.(10) Además, la Ley de Gasolina persigue proteger la industria de la venta de combustible al detal de toda práctica discriminatoria que pretenda eliminar al detallista individual de gasolina de la competencia del mercado, así como también de aquellas prácticas discriminatorias y de control sobre la estructura de precios dirigidas a favorecer a unos detallistas en per-juicio de otros y del consumidor.(11)
Por otro lado, apenas unos meses después de aprobada la Ley de Gasolina, la Legislatura aprobó —a manera de addendum a esta última— la Ley Núm. 73 de 23 de junio de 1978, según enmendada, 23 L.P.R.A. sec. 1131 et seq. (Ley Núm. 73), dirigida a la “Reglamentación y Control de la Industria de la Gasolina”. Con la aprobación de la Ley Núm. 73 se declaró “la industria de la gasolina en todas sus facetas como una revestida de interés público”.(12) Al así hacerlo se reconoció que la industria de la gasolina constituye un elemento fundamental para la seguridad y el bienestar del Pueblo de Puerto Rico. Esto debido a que de la disponibilidad de ese producto dependía en gran medida en aquel entonces —y evidentemente continúa siendo así en la actualidad— el normal funcionamiento de nuestra economía y el continuo desarrollo de las actividades cotidianas del País.(13)
*913 Cónsono con la Ley de Gasolina, el propósito de la Ley Núm. 73 es regular de manera efectiva ciertos aspectos de la industria de la gasolina y así asegurar que los intereses del Pueblo de Puerto Rico estén adecuadamente protegidos de actividades perjudiciales que tengan lugar en cual-quiera de los distintos niveles operacionales de esa industria(14) Al así actuar, el legislador señaló que es al Gobierno al que le compete asegurar que exista una situa-ción estable dentro de toda actividad que afecte el bienes-tar general de la ciudadanía, así como asegurar el buen orden de la comunidad y la protección de los mejores inte-reses del sistema económico y gubernamental. (15)
Para cumplir con sus propósitos, la Ley Núm. 73 esta-bleció ciertas obligaciones y prohibiciones que se detallan en su Art. 3.(16) Entre ellas, y como ejemplo, se prohíbe que en las relaciones entre distribuidores-mayoristas y deta-llistas existan simultáneamente contratos de arrenda-miento y subarrendamiento (lease and lease-back), cuando dicha relación tenga el efecto o el propósito de cancelar la obligación del pago entre las partes o de restringir irrazo-nablemente el derecho a la libre contratación o a la dispo-sición de la propiedad. (17) Además, la Ley Núm. 73 estable-ció la obligación a todo distribuidor-mayorista de presentar en la Oficina de Asuntos Monopolísticos (O.A.M.)(18) una copia legible de todo contrato en el que se establezca una relación comercial con un detallista, dentro de los diez días siguientes a su formalización, así como toda enmienda o modificación subsiguiente a éste.
*914 Conjuntamente, y para asegurar el cumplimiento de sus objetivos y propósitos, la Ley Núm. 73 facultó a varias agencias gubernamentales y les impuso la responsabilidad de realizar diversas funciones. Entre esas agencias se en-cuentran el Departamento de Comercio,(19) la Comisión de Servicio Público, la Junta de Planificación, la Administra-ción de Reglamentos y Permisos y el Departamento de Asuntos del Consumidor (D.A.Co.).(20)
Por último, es menester considerar lo que establece el Art. 5 de la Ley Núm. 73 con relación a la Ley de Monopo-lios, supra:

Sec. 1134. Aplicación de la Ley de Monopolios

Nada de lo aquí dispuesto o promulgado por reglamento o de otra forma, conforme a las disposiciones de las sees. 1131 a 1135 de este título, será interpretado como que exceptúa de o confiere inmunidad en cuanto a la aplicabilidad de las dispo-siciones de las sees. 257 a 274 del Título 10.(21)
En resumen, es evidente que desde sus inicios, tanto la Ley de Gasolina como su addendum, la Ley Núm. 73, dispusieron no solo para la protección de la industria de venta de combustible al detal de toda práctica discriminatoria en perjuicio de los mejores intereses del pueblo de Puerto Rico, sino que reconocieron expresamente la injerencia de la Ley de Monopolios en tal proceso. Así, ambas leyes dispusieron para que la actuación del Departamento de Justicia de Puerto Rico, a través de su O.A.M., fuera cardinal en el cumplimiento de sus disposiciones fiscalizadoras. Además, el legislador dispuso para que otras agencias gubernamentales, tales como el D.A.Co., tuvieran también participación.
A tono con todo lo anterior, el Art. 2(a) de la Ley de Gasolina, supra, 23 L.P.R.A. sec. 1102(a), establece que
*915 ... ningún productor, refinador o distribuidor-mayorista adqui-rirá o establecerá, abrirá, operará o recobrará para operar es-tación alguna de servicio de venta al detal de gasolina para ser operada con personal de su propia compañía o empresa subsi-diaria, agente, agente por comisión, o bajo contrato con alguna persona natural o jurídica, que opere o administre dicha esta-ción de servicio de venta al detal mediante convenio o arreglo remunerado con dicho productor, refinador o distribuidor-mayorista. La estación de servicio de venta de gasolina sólo podrá ser operada por un detallista.
Asimismo, el Art. 4 de la Ley de Gasolina, supra, 23 L.P.R.A. sec. 1104, establece que
[t]odo productor o refinador de petróleo o distribuidor-mayo-rista de productos de petróleo que supla gasolina y/o combustibles especiales a estaciones de servicio para la venta al detal de dichos productos estará obligado a proveer uniformemente a todos los detallistas de venta de gasolina y/o combustibles especiales a quienes supla, todo descuento, deducción, dismi-nución o rebaja en precios que conceda de forma directa o indirecta.(22)
Ahora bien, relacionado directamente a la controversia que nos ocupa, analizamos el Art. 4A de la Ley de Gasolina, supra, el cual dispone lo siguiente:

Sec. 1104a. Desvinculación operacional

Ningún refinador, productor de petróleo o distribuidor-mayorista podrá, mediante convenio, arreglo, contrato, es-quema corporativo operacional, con cualquier detallista y/o persona natural o jurídica, o de cualquier otra forma operar directamente una estación de servicio de venta al detal de ga- *916 solina de forma que impida su completa desvinculación operacional. Ningún refinador, productor de petróleo o distri-buidor-mayorista podrá, mediante convenio, arreglo, contrato, esquema corporativa [sic] operacional, con cualquier detallista y/o persona natural o jurídica, o de cualquier otra forma im-poner, requerir, fijar o limitar directamente el margen de ga-nancia y/o el precio de venta al detal de la gasolina y/o combustibles especiales en la estación de servicio de venta al detal.
El Art. 4A de la Ley de Gasolina, supra, es el resultado de una enmienda que se hiciera a este estatuto mediante la Ley Núm. 157-1996 (Ley Núm. 157) y otra enmienda al propio artículo —que añade la segunda oración— mediante la aprobación de la Ley Núm. 74-2005. El artículo establece la “desvinculación operacional” o, lo que es lo mismo, prohíbe la llamada “vinculación operacional” de los mayoristas de gasolina con las estaciones de venta al detal. La Ley Núm. 157 también enmendó la Ley de Gasolina para establecer que “desvinculación operacional” es el cese por parte de un refinador, productor de petróleo o distribuidor-mayorista “de participar en forma directa en la operación o actividades de intercambio comercial de la venta al detal de gasolina y combustibles especiales en las estaciones de servicio de venta al detal”.(23)
De otra parte, y cardinal a la controversia que nos ocupa, debemos considerar también el Art. 8 de la Ley de Gasolina, el cual dispone lo siguiente:

See. 1108. Violación de competencia justa

Cualquier violación a las sees. 1102, 1102a, 1104, 1104a, 1105 y 1105a de este título constituirá una práctica o acto injusto [o] engañoso y estará sujeto a las disposiciones de las sees. 257 et seq. del Título 10. (Énfasis suplido.)(24)
El Art. 8 de la Ley de Gasolina, supra, está dirigido a dos fines íntimamente ligados. En primer lugar, ins- *917 taurar como “práctica o acto injusto o engañoso” toda vio-lación a los Arts. 2, 2A, 4, 4A, 5 y 5A de la Ley de Gasolina. En segundo lugar, establecer que cualquier violación a los artículos mencionados estará sujeta a lo dispuesto en la Ley de Monopolios. Complementando esta disposición, el Art. 10 de la Ley de Gasolina dispone que “[e]l cumplimiento de los propósitos y las disposiciones de las secs. 1101 a 1110 de [la Ley de Gasolina] será responsabilidad del Secretario de Justicia, por conducto de la Oficina de Asuntos Monopolís-ticos de dicho Departamento”.(25)
En su versión original, el Art. 8 de la Ley de Gasolina, supra, disponía de la manera siguiente:
Cualquier violación a los Arts. 4, 5, 6 y 7 constituirá una prác-tica o acto injusto o engañoso y estará sujeto a las disposicio-nes del Artículo 3 de la Ley Núm. 77 de 25 de junio de 1964.(26)
Nótese que este artículo originalmente hacía referencia a violaciones al Art. 4 de la Ley de Gasolina, supra, el cual establece la obligación de todo productor o refinador de pe-tróleo o distribuidor-mayorista de productos de petróleo de proveer uniformidad en todo descuento, deducción, dismi-nución o rebaja en precios a los detallistas; violaciones al Art. 5, el cual establece la obligación de todo productor o refinador de petróleo o distribuidor-mayorista de productos de petróleo de proveer uniformidad en la renta de equipos y rótulos a los detallistas, y violaciones al Art. 6, el cual establece la obligación de todo productor o refinador de pe-tróleo o distribuidor-mayorista de productos de petróleo de instaurar un prorrateo indiscriminado y una distribución uniforme entre todos los detallistas a quienes supla gaso-lina para la venta, durante tiempos de escasez, o disminu-ción en el abasto o disponibilidad de gasolina o de combustibles especiales. Por otro lado, el Art. 8 en su versión original también hacía referencia a violaciones al Art. 7, el *918 cual establece una prohibición al detallista de solicitar o inducir la concesión o rebaja en precios en la renta de equi-pos y rótulos. Como se puede percibir, cada disposición a la cual el Art. 8 en su versión original hacía referencia —Arts. 4 al 7— contenía una prohibición cuya violación constituía “una práctica o acto injusto o engañoso”.
Ahora bien, desde su redacción original, el Art. 8 de la Ley de Gasolina, supra, ha sufrido dos enmiendas. La pri-mera de ellas mediante la aprobación de la Ley Núm. 157-1996 (Ley Núm. 157), la cual en su Exposición de Motivos señalaba lo siguiente (haciendo referencia a la Ley Núm. 3 de 1978, Ley de Gasolina):
En el 1978, la Asamblea Legislativa aprobó legislación diri-gida a proteger a los detallistas de gasolina de posibles prácti-cas predadoras de parte de compañías mayoristas distribuido-ras de gasolina. Una de esas leyes, la Ley Núm. 3 ... dispuso que ninguna compañía mayorista podía operar directamente estaciones de gasolina, sujeto a determinadas excepciones. La responsabilidad para vigilar por el cumplimiento de esta ley fue asignada al Secretario de Justicia a través de su Oficina de Asuntos Monopolísticos. (Enfasis suplido.(27)
Como puede verse, en la Exposición de Motivos de la Ley Núm. 157, la Asamblea Legislativa mencionó la Ley de Gasolina entre aquellas leyes cuya intención es “proteger a los detallistas de gasolina de posibles prácticas predadoras de parte de las compañías mayoristas distribuidoras de gasolina”. (Enfasis suplido.(28) Además, señaló que la Ley de Gasolina “dispuso que ninguna compañía mayorista po-día operar directamente estaciones de gasolina, sujeto a determinadas excepciones”.(29) De manera que la Ley Núm. 157, en su Exposición de Motivos, reconoció como una prác-tica depredadora, esto es, dañina a los detallistas y prohi-bida por la Ley de Gasolina, aquella en la cual el mayorista *919 operaba directamente una estación de gasolina. Señalaba, además, que la fiscalización de esa prohibición era un asunto que trabajaría la Oficina de Asuntos Monopolísticos.
Por otro lado, en su último párrafo, la Exposición de Motivos de la Ley Núm. 157 también señala como su pro-pósito enmendar la Ley de Gasolina para que se establezca la completa separación entre las operaciones de ventas al detal y las de mayoristas y refinadores de gasolina. El texto mencionado dispone así:
Con la presente medida se pretende cerrar las brechas de excepción que, por quedar abiertas en 1978, han limitado el logro de los objetivos públicos en esta industria. En específico, se establece la completa separación entre las operaciones de ventas al detal y las de mayoristas y refinadores de gasolina, disponiéndose de un plazo para que se lleven a efecto las des-vinculaciones necesarias hasta lograrlo. (Enfasis suplido.(30)
Como parte de las enmiendas realizadas a la Ley de Ga-solina dirigidas a establecer esa “completa separación entre las operaciones” de detallistas y mayoristas, la Ley Núm. 157 creó el mencionado Art. 4A, que prohíbe todo acto que impida la llamada “desvinculación operacionaP. La defini-ción de “desvinculación operacional”, que la propia Ley Núm. 157 también estableció como una de las enmiendas a la Ley de Gasolina, supra, señala que ésta “[o]curre cuando un ... distribuidor mayorista cesa de participar en forma directa en la operación o actividades de intercambio comer-cial de la venta al detal de gasolina ... en las estaciones de servicio de venta al detal”.(31)
Ahora bien, la enmienda al Art. 8 de la Ley de Gasolina, supra, producida por la Ley Núm. 157, cambió la mayoría de los artículos a los que hacía referencia la versión del artículo original. La versión del Art. 8 después de la en-mienda de la Ley Núm. 157 pasó a ser la siguiente:
*920 Cualquier violación a los Artículos 1, 2, 3, 4 y 5 constituirá una práctica o acto injusto o engañoso y estará sujeto a las disposiciones del Artículo 3 de la Ley Núm. 77 de 25 de junio de 1964, según enmendada .... 1996 Leyes de Puerto Rico 686.
Al analizar el texto anterior tenemos que concluir que la referida enmienda al Art. 8 que se introdujo mediante la Ley Núm. 157 produjo cambios ilógicos en unos casos e inconsecuentes en otros. Nos explicamos. En primer lugar, no guarda relación alguna con la lógica el que una ley en cuya Exposición de Motivos se señala que su propósito es enmendar la Ley de Gasolina para establecer una com-pleta separación entre las operaciones de ventas al detal y las de mayoristas, evitando así “posibles prácticas preda-doras [monopolísticas] de parte de las compañías mayoris-tas distribuidoras de gasolina”; que crea el Art. 4A de “des-vinculación operacional” para esos fines, y que reconoce que la fiscalización de tal cumplimiento descansa en el expertise de la O.A.M., no incluya el Art. 4A como parte de la enmienda al mencionado Art. 8 de la Ley de Gasolina, supra.
Por otro lado, la enmienda al Art. 8 de la Ley de Gaso-lina, supra, que introdujo la Ley Núm. 157 también in-cluyó, como “práctica o acto injusto o engañoso”, cualquier violación al Art. 1 de la Ley de Gasolina, supra, 23 L.P.R.A. sec. 1101. Sin embargo, el Art. 1 de la Ley de Gasolina, supra, solo establecía en ese entonces —y establece actual-mente— una serie de definiciones de términos, ninguno de los cuales constituye una prohibición per se. Por lo tanto, nadie podía cometer una violación al Art. 1 de la Ley de Gasolina, supra, pues tal artículo no prohibía ni prohíbe cosa alguna.
Por último, lo mismo ocurría con el Art. 3 de la Ley de Gasolina, supra, 23 L.P.R.A. sec. 1103. Tal artículo estable-cía en aquel momento —y permanece igual al presente— la creación del “Comité Interagencial sobre la Industria de la Gasolina”. Como ocurría con el Art. 1 (“Definiciones”), el Art. 3 no instituía prohibición alguna, por lo que la inclu- *921 sión de ese artículo en la enumeración establecida por la enmienda de la Ley Núm. 157 al Art. 8 de la Ley de Gaso-lina, supra, resultaba totalmente inconsecuente.
Siendo así, la pregunta que procede es a qué obedeció la redacción y aprobación final del Art. 8 de la Ley de Gaso-lina, supra, después de la enmienda integrada por la Ley Núm. 157. Aunque el historial legislativo no nos arroja de-masiada luz al respecto, sí encontramos que la primera versión de enmienda a este artículo (que se presentó en el Proyecto de Ley de la Cámara de Representantes) seña-laba que constituiría una práctica o un acto injusto o enga-ñoso “[cjualquier violación a los Artículos 2, 4, 4A, 5, 5A, 6, 6A, y 7”. (Enfasis en el original y suplido.(32)
Por otro lado, al codificarse la versión de la segunda y última enmienda que sufriera este artículo mediante la Ley Núm. 74-2005, se señala en su historial la siguiente nota de codificación:
La ley enmendadora de 1996 parece haberse referido a los arts. 1, 2, 3, 4 y 5 de la propia ley en vez de los artículos enmendados o adicionados por la misma, a saber: arts. 1, 2, 4A, 5Ay 8, o sea, secs. 1101, 1102, 1104a, 1105a y 1108 de este título. Sin embargo, por tener semejanza al contenido de las secciones referidas originalmente en la ley de 1978, pudiera ser que la ley de 1996 intentó referirse a los arts. 4, 4A, 5 y 5A de la ley, secs. 1104, 1104a, 1105 y 1105a de este título. (Enfasis suplido.) 23 L.P.R.A. sec. 1108 n.
Al considerar todo lo anterior, no nos cabe duda de que la versión del Art. 8 de la Ley de Gasolina, supra, que surgió como resultado de la enmienda realizada por la Ley Núm. 157 fue el producto de un error probablemente tipo-gráfico, que no reflejaba la intención o voluntad del legislador. Como sugiere la nota de codificación del histo-rial de este artículo, entendemos que la intención de la Ley Núm. 157 era incluir los Arts. 4, 4A, 5 y 5A en la versión *922 del Art. 8 de la Ley de Gasolina, supra, y su exclusión responde a un mero error administrativo (clerical error).
Determinamos lo anterior, considerando la norma de hermenéutica jurídica que reiteramos en Passalacqua v. Mun. de San Juan, 116 D.P.R. 618, 623 (1985), en donde señalamos lo siguiente:
En Roig Commercial Bank v. Buscaglia, Tes., 74 D.P.R. 986, 998 (1953), este Tribunal determinó que si una palabra, frase o disposición ha sido aprobada por inadvertencia o error, espe-cialmente si es contraria al resto de la ley o limitaría la efecti-vidad de ésta, se puede eliminar. Entendemos que bajo las mis-mas circunstancias se puede añadir una frase o palabras, para que se pueda cumplir con la intención legislativa. (Enfasis suplido.)
De manera que, siendo consistentes con lo que ha sido nuestra pauta en materia de interpretación jurídica al con-frontar situaciones en una ley como la del caso de autos, determinamos que el legislador tuvo la intención de que el Art. 4A formara parte de los enumerados en el Art. 8 de la Ley de Gasolina, supra, desde la aprobación de la Ley Núm. 157; así debe interpretarse.
Para finalizar el análisis de los artículos de la Ley de Gasolina que son necesarios considerar para la resolución del caso de autos, tenemos que referirnos al Art. 7 de la mencionada ley, 23 L.P.R.A. sec. 1107. Dicho artículo dispone lo siguiente:

See. 1107. Obligación del detallista

Ninguna persona natural o jurídica que opere una estación de servicio de venta al detal podrá, a sabiendas, solicitar o inducir la concesión, o rebaja en precios o en la renta de equi-pos y rótulos, en violación a las sees. 1104 y 1105 de este título. (Énfasis suplido.)
Como surge claramente de su texto —incluso desde el título — , este artículo se dirige únicamente al vendedor al detal de combustible, prohibiéndole que, a sabiendas, in-duzca o le solicite a un productor o distribuidor-mayorista *923 (entre otros) la concesión o rebaja en precios o en la renta de equipos y rótulos, en violación a los Arts. 4 y 5 de la Ley de Gasolina, supra. En otras palabras, el objeto de prohi-bición es aquel detallista que pretende solicitar o inducir a un productor o distribuidor-mayorista a que le provea pre-cios distintos en la gasolina o en los combustibles especia-les, que los que provee a otros detallistas, esto en violación al Art. 4 de la Ley de Gasolina, supra. De igual manera, el artículo está dirigido únicamente a aquel detallista que so-licite o induzca al productor o distribuidor-mayorista (en-tre otros) a que le provea una renta distinta de equipos y rótulos que aquella que se le provee a otros detallistas, esto en violación al Art. 5 de la Ley de Gasolina, supra.
B. Ley de Monopolios
Las leyes monopolísticas, así como aquellas que pretenden establecer la justa competencia y que establecen restricciones al comercio, constituyen estatutos que precisan extremo cuidado tanto en su legislación como en su interpretación jurídica. El objetivo que inspira este tipo de estatuto está fundamentado en intereses apremiantes y, como tal, indispensables para la economía de la jurisdicción en la que se aplican.
Así, en Colón Cabrera v. Caribbean Petroleum,(33) expre-samos con relación a nuestra Ley de Monopolios que, “con-siderando que se trata de un asunto que incide sobre los cimientos de nuestra sociedad democrática, entendemos que los propósitos que subyacen dicha legislación son de la más alta jerarquía y constituyen un interés apremiante del Estado”.
El propósito principal de este tipo de estatuto yace en el principio económico fundamental que dispone la preserva-ción de la libertad de competencia y el entorpecimiento de *924 toda práctica que perjudique el desarrollo de los distintos mercados. Por lo tanto, tales estatutos tienen como objetivo erradicar los actos abusivos, desleales y monopolísticos que tiendan a limitar la actividad mercantil, favoreciendo así la libre y abierta competencia en los mercados.(34)
En Puerto Rico, la Ley de Monopolios fue redactada tomando como base dos estatutos federales: la Ley Sherman(35) y la Ley Clayton.(36) De hecho, este también es el patrón en la mayoría de los estados de la Unión que también cuentan con estatutos que regulan de alguna manera la competencia, los monopolios y las restricciones al comercio, y que contienen disposiciones comparables con las de las leyes federales antimonopolísticas.
Nuestra Ley de Monopolios se promulgó “para asegu-rarle al Pueblo en general, y a los pequeños comerciantes en particular, los beneficios de la libre competencia”.(37) Como señalamos en Colón Cabrera v. Caribbean Petroleum, supra, pág. 594, el propósito de la Ley de Monopolios es
... evitar “la confabulación entre firmas para dominar el mer-cado, [el] acaparamiento de materias primas, [los] aumentos indebidos en los precios resultantes de una posición monopo-lística, [las] prácticas discriminatorias en las relaciones con clientes [y la] concentración extrema de la actividad econó-mica y de la riqueza en algunos grandes consorcios de empresas”. (Corchetes en el original.)
Ahora bien, en cuanto a la controversia que nos ocupa, es necesario considerar, en específico, los Arts. 3(a) y 12(a) de la Ley de Monopolios.
*925 C. El Art. 3(a) de la Ley de Monopolios
En lo pertinente, el Art. 3(a) de la Ley de Mono-polios(38) establece que serán ilegales “[l]os métodos injustos de competencia, así como las prácticas o actos injustos o engañosos en los negocios o el comercio”. (Enfasis suplido.) Así también el inciso (c) de este artículo establece lo siguiente:
(c) Sin menoscabo de la facultad de recurrir a los medios au-torizados por la sec. 269 de este título [injunctions], la Oficina de Asuntos Monopolísticos podrá radicar [sic] y tramitar que-rellas administrativas en el Departamento de Asuntos del Consumidor para prevenir, evitar y detener las violaciones al inciso (a) de esta sección o los reglamentos aprobados de con-formidad al inciso (b) de la misma.(39)
Distinto a otras disposiciones de la Ley de Monopolios, el Art. 3 tuvo su base en la Sec. 5(a)(1) de la ley que creó la Comisión Federal de Comercio (15 U.S.C.A. sec. 45), la cual —al igual que el Art. 3(a)— declara ilegales los méto-dos injustos de competencia y los actos o prácticas injustas o engañosas que afectan el comercio.(40)
Por otra parte, el inciso (c) del Art. 3 de la Ley de Monopolios, 10 L.P.R.A. sec. 259(c), faculta expre-samente a la Oficina de Asuntos Monopolísticos del Depar-tamento de Justicia a actuar como ente fiscalizador ante el D.A.Co. en cuanto a toda violación por “métodos injustos de competencia, así como las prácticas o actos injustos o engañosos en los negocios o el comercio”. La Oficina de Asuntos Monopolísticos se creó mediante el Art. 16 del mencionado estatuto para implementar el propósito que lo inspira.(41) La O.A.M. es una entidad adscrita al Departa- *926 mentó de Justicia, con facultades para la administración de la legislación sobre prácticas monopolísticas, así como para la fiscalización de éstas. Además, posee la facultad de promulgar reglamentos y proscribir actuaciones que cons-tituyan métodos injustos de competencia y prácticas o ac-tos injustos o engañosos en los negocios o el comercio.(42) En fin, la O.A.M. es una entidad creada con una delegación de poderes amplios que le permite al Estado contar con los instrumentos investigativos precisos para cumplir con el propósito fiscalizador de la Ley de Monopolios.(43) No existe duda de que, conforme al Art. 3 de la Ley de Monopolios, supra, es la O.A.M. el organismo gubernamental con el de-ber ministerial de fiscalizar y velar por el cumplimiento de esa ley.
Ahora bien, nótese que el Art. 3 de la Ley de Monopolios, supra, no le confiere poderes adjudicativos a la O.A.M. Esto es, no es a la O.A.M. a la cual le corresponde adjudicar la controversia, sino investigar y presentar la causa de acción. El inciso (c) del Art. 3 de la Ley de Mono-polios, supra, dispone no solo que es ante D.A.Co. que la O.A.M. podrá presentar y tramitar querellas buscando prevenir, evitar y detener las violaciones al inciso (a) del propio artículo, sino que en el resto del artículo se establece todo un esquema procesal y apelativo que deberá seguirse ante esa agencia y del cual mencionaremos algunos detalles.
Así, el inciso (c) del Art. 3 de la Ley de Monopolios, supra, establece que una vez la parte querellada haya sido notificada de la querella en su contra, D.A.Co. deberá cele-brar una vista y resolver la controversia entre las partes, otorgando el remedio más adecuado tan pronto le sea posible.(44) Mientras, el inciso (d) establece que la O.A.M. tendrá un término de treinta días para recurrir en revisión *927 de la decisión de D.A.Co. al Tribunal de Primera Instancia, si esta le fuera adversa.(45) Por su parte, el inciso (e) esta-blece la forma en que se formalizará tal recurso de revisión ante el Tribunal de Primera Instancia, del cual se tendrá que notificar a la parte querellada y a D.A.Co., que contará con un término de quince días para solicitar inter-vención.(46)
El inciso (g) establece que el Tribunal de Primera Instan-cia revisará la decisión de D.A.Co. a base del récord admi-nistrativo que se sometió ante la agencia y solo en cuanto a las conclusiones de derecho. Además, las determinaciones de hecho de D.A.Co. “serán concluyentes para el tribunal si es-tuvieren sostenidas por evidencia sustancial”.(47)
Es evidente que por la referencia directa a esa agencia, por el procedimiento tan detallado establecido ante ésta, y considerando la naturaleza de las causas de acción que in-trincan las controversias monopolísticas —sobre todo ante alegaciones de prácticas o actos injustos o engañosos— el legislador decidió que fuera D.A.Co. el que tuviera la juris-dicción primaria exclusiva para tramitar y adjudicar toda querella que presentara la O.A.M.
La jurisdicción primaria exclusiva de D.A.Co. en este asunto se confirma, además, mediante la propia Ley Orgánica del Departamento de Asuntos del Consumidor, Ley Núm. 5 de 23 de abril de 1973, según enmendada,(48) la cual en su Art. 6(x) incluye entre los poderes y las faculta-des que ejercerá el Secretario de Asuntos del Consumidor el “[ajdjudicar las querellas que la Oficina de Asuntos Mo-nopolísticos del Departamento de Justicia, radique [sic] y procese en virtud de lo dispuesto en la sec. 259 [Art. 3] del *928 Título 10”.(49) Como vemos, en armonía con el Art. 3(c) de la Ley de Monopolios, el inciso (x) del Art. 6 de la Ley Orgá-nica de D.A.Co. le confiere jurisdicción a esa agencia para adjudicar las querellas que le presente la O.A.M. al am-paro del Art. 3 de la Ley de Monopolios.
En conclusión, es al Departamento de Justicia, a través de la O.A.M., al que, conforme al mandato legislativo, corresponde fiscalizar directamente las infracciones a la Ley de Monopolios, específicamente en lo concerniente a las violaciones a las disposiciones de prácticas injustas de comercio, incluyendo toda práctica o acto injusto o engañoso. Además, concluimos que, de acuerdo con el Art. 3 de la Ley de Monopolios, supra, es a D.A.Co. al que corresponde la jurisdicción primaria exclusiva en toda causa de acción antimonopolística emprendida por la O.A.M., cuya causa de acción esté fundamentada en alguna práctica o acto injusto o engañoso.
D. El Art. 12(a) de la Ley de Monopolios
Como ya hemos establecido, una infracción a la prohibición de vinculación operacional que estatuye el Art. 4A de la Ley de Gasolina, supra, constituye una “práctica o acto injusto o engañoso”, acción que estaría sujeta a las disposiciones de nuestra Ley de Monopolios, conforme al Art. 8 de la Ley de Gasolina, supra. De manera que corresponde entonces, ante la alegación de una violación a la disposición que exige tal “desvinculación operacional”, remitirse a aquellos artículos de la Ley de Monopolios que versan sobre las “prácticas o actos injustos o engañosos” al comercio, para resolver cualquier interrogante sobre esta materia. Ya hemos analizado el Art. 3 de la Ley de Mono-polios, supra, por lo que nos resta discutir el Art. 12 del mencionado estatuto, específicamente el inciso (a), el cual dispone:

*929
Sec. 268. Demandas por personas perjudicadas

(a) Cualquier persona que sea perjudicada en sus negocios o propiedades por otra persona, por razón de actos, o intentos de actos, prohibidos o declarados ilegales por las disposiciones de este capítulo, salvo las de las sees. 259 y 261 de este título, puede demandar a causa de dichos actos ante el Tribunal de Primera Instancia y tendrá derecho a recobrar tres (3) veces el importe de los daños y perjuicios que haya sufrido, más las costas del procedimiento y mía suma razonable para honora-rios de abogado. (Énfasis suplido.)(50)
El Art. 12(a) de la Ley de Monopolios, supra, establece el llamado “remedio de triple daño” para toda persona que su-fra daños como consecuencia de actos antimonopolísticos. La acción judicial para recobrar tales daños deberá iniciarse dentro del término de cuatro años, contados a partir del na-cimiento de la causa de acción. (51) Ahora bien, se deduce cla-ramente del texto de este inciso (a) del Art. 12 de la Ley de Monopolios, supra, que, sin distinción alguna, éste exceptúa de su ámbito jurisdiccional toda causa de acción que se pre-tenda o se tenga que iniciar al amparo de la see. 259 de la propia Ley de Monopolios; o sea, toda causa de acción por prácticas o actos injustos o engañosos.
III
En el presente caso no albergamos dudas con relación a que una persona privada, ya sea natural o jurídica, carece de legitimación activa para presentar una causa de acción contra un distribuidor-mayorista por alegada violación al Art. 4A de la Ley de Gasolina, supra. Así surge claramente de cada estatuto concernido. Veamos.
El Art. 8 de la Ley de Gasolina, supra, establece como una “práctica o acto injusto [o] engañoso” cualquier viola-ción al Art. 4A de la mencionada ley y señala que tal vio- *930 lación “estará sujet[a] a las disposiciones de las secs. 257 et seq. del Título 10”, o sea, a la sección 257 “y las siguientes” de la Ley de Monopolios.
Por su parte, el Art. 3(a) de la Ley de Monopolios (10 L.P.R.A. sec. 259(a)) declara como ilegal “las prácticas o actos injustos o engañosos”, que es precisamente la con-ducta descrita y remitida ante el ámbito de esa ley por el Art. 8 de la Ley de Gasolina, supra. Nótese, entonces, que existe una clara identificación o concordancia en el len-guaje utilizado en ambas disposiciones. De manera que, por el lenguaje claro de ambos estatutos —Ley de Gasolina y Ley de Monopolios — , es evidente que el legislador dis-puso, a través del Art. 8 de la Ley de Gasolina, supra, que toda violación al Art. 4A de esa ley fuera comprendida, cu-bierta o estuviera bajo el ámbito jurisdiccional del Art. 3 de la Ley de Monopolios, supra.
Una vez determinamos que la conducta prohibida por el Art. 4A de la Ley de Gasolina, supra, se encuentra bajo el ámbito jurisdiccional del Art. 3 de la Ley de Monopolios (10 L.R.P.A. sec. 259), nos enfrentamos al Art. 12(a) de la Ley de Monopolios, supra, que, a su vez, exceptúa expresamente de su ámbito jurisdiccional toda acción que se presente al amparo de la referida sección 259. Por lo tanto, cualquier persona privada que sufra daños por actuaciones prohibidas por la Ley de Monopolios cuenta con un remedio de triple daño al amparo del Art. 12(a) de la Ley de Monopolios, supra, excepto que su causa de acción se fundamente en el Art. 3 de la Ley de Monopolios (10 L.P.R.A. sec. 259).(52) Siendo así, evidentemente, toda causa de acción al amparo del Art. 4A de la Ley de Gasolina, supra, se encuentra excluida de la posibilidad del re- *931 medio de triple daño que provee el Art. 12(a) de la Ley de Monopolios, supra.
En este contexto, Esso argumenta que erró el foro de instancia al no desestimar, al amparo de la Regla 10.2 de Procedimiento Civil, la reclamación de las recurridas fundamentada en el Art. 4A de la Ley de Gasolina.(53) Le asiste la razón. La Regla 10.2 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. V) establece unas defensas privilegiadas que, como tal, se pueden presentar en cualquier momento del proceso.(54) Es decir, tales defensas no se pierden si no se levantan en la contestación de la demanda o antes. Entre esas defensas privilegiadas, la Regla 10.2 incluye la falta de jurisdicción sobre la material.(55)
Recientemente, en González v. Mayagüez Resort & Casino, 176 D.P.R. 848, 855 (2009), reiteramos nuestra pauta en el sentido de que la ausencia de jurisdicción sobre la materia:
(1) no es susceptible de ser subsanada; (2) las partes no pue-den voluntariamente conferírsela a un tribunal como tampoco puede éste arrogársela; (3) conlleva la nulidad de los dictáme-nes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal motu proprio.
Por otro lado, una parte demandante posee legitimación activa si cumple con los requisitos siguientes: “(1) ha sufrido un daño claro y palpable; (2) el referido daño es real, inmediato y preciso, y no abstracto o hipotético; (3) *932 existe conexión entre el daño sufrido y la causa de acción ejercitada, y (4) la causa de acción surge bajo el palio de la Constitución o de una ley .” (Énfasis suplido.)(56) Conside-rando entonces que, como hemos establecido, una persona privada no puede presentar una causa de acción por ale-gada violación al Art. 4A de la Ley de Gasolina, supra, las recurridas carecen de una causa de acción que surja bajo el palio de una ley. Siendo así, el foro de instancia cierta-mente carecía de jurisdicción sobre la materia para aten-der tal causa de acción y debió desestimarla, conforme a la Regla 10.2 de Procedimiento Civil de 1979, supra.
De otra parte, recientemente establecimos en SLG Semidey Vázquez v. ASIFAL, 177 D.P.R. 657, 676 (2009), que “si [un] estatuto le confiere la jurisdicción al organismo administrativo, se trata de una jurisdicción estatutaria (exclusiva)”.(57) Allí también pautamos lo siguiente:
El concepto jurisdicción estatutaria o exclusiva guarda rela-ción con la jurisdicción primaria concurrente pero es distinto en cuanto a su alcance y naturaleza. En la jurisdicción exclu-siva se trata de situaciones en que no aplica la doctrina de jurisdicción primaria concurrente porque la propia ley aclara que esta última no existe. Es decir, el propio estatuto establece una jurisdicción exclusiva. En tales casos estamos frente a un mandato legislativo. De ahí, que cuando un estatuto le con-fiere de manera expresa la jurisdicción a un órgano adminis-trativo sobre determinado tipo de asuntos, los tribunales no tendrán autoridad para dilucidar el caso en primera instancia. Claro está, la jurisdicción primaria exclusiva no soslaya la re-visión judicial posterior de la decisión del organismo. (Citas omitada y énfasis en el original.)(58)
Al observar la manera expresa, amplia y detallada con la que el legislador se manifestó, determinamos *933 que, con excepción de los remedios autorizados por la see. 269 (injunctions), el Art. 3 de la Ley de Monopolios, supra, le confiere jurisdicción primaria exclusiva a D.A.Co. en la dilucidación de cualquier violación al inciso (a) del propio artículo, esto es, la utilización de métodos injustos de com-petencia y prácticas o actos injustos o engañosos en los negocios o el comercio.
En cuanto a la determinación del tribunal de instancia en el sentido de que “un ente privado como la demandante puede presentar una causa de acción al amparo del Artí-culo 7 de la Ley de Control de Gasolina”, por lo que ya explicamos, determinamos que la misma es claramente errónea. El Art. 7 de la Ley de Gasolina, supra, provee para una causa de acción en contra de los detallistas y no a favor de estos. De otra parte, además de que la interpreta-ción de tal estatuto por parte del foro primario no fue la correcta, lo cierto es que las recurridas nunca reclamaron una causa de acción al amparo del Art. 7 de la Ley de Gasolina, sino del Art. 7 de la Ley de Monopolios, supra.(59)
Ahora bien, con relación a que la causa de acción de las recurridas pueda ser resarcida como un remedio sencillo u ordinario de daños y peijuicios al amparo del Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, nada encontramos en la ley que lo impida; al contrario. Como bien señala la Procuradora General en su comparecencia especial, surge de la discusión reseñada en el historial legislativo con relación a los informes camerales que originaron la Ley de Monopolios, lo siguiente:
En cuanto a las acciones de los particulares, por triple daño, estas no se autorizan con respecto a los actos prohibidos por el Artículo 3, sin que por ello se intente afectar el derecho a enta-blar una acción ordinaria de daños y perjuicios, si ésta proce- *934 diere conforme al Código Civil u otros principios de ley. (Énfasis suplido.)(60)
Como vemos, las expresiones del legislador fueron claras. La Asamblea Legislativa no tuvo la intención de que una causa de acción como la del caso de autos no pu-diera ser resarcida como un remedio sencillo u ordinario de daños y perjuicios al amparo del Art. 1802 del Código Civil, supra. Todo lo contrario.
Por último, al final de su alegato, las recurridas argu-mentan que la causa de acción en este litigio comprende hechos ocurridos desde el 2000 hasta el 2005, periodo de tiempo en el que el Art. 8 de la Ley de Gasolina, supra, no había sido enmendado para incluir el Art. 4A. Por esto, las recurridas concluyen que como tal enmienda ocurrió con posterioridad a la presentación de su causa de acción, esta —la enmienda de 2005— tendría un efecto retroactivo en violación al Art. 3 de nuestro Código Civil.(61) No les asiste la razón.
En primer lugar, ya hemos determinado, basado en el análisis del artículo enmendando y del historial legislativo de la Ley Núm. 157, supra, que la intención de la Asam-blea Legislativa fue que el Art. 4A de la Ley de Gasolina, supra, estuviera incluido bajo el ámbito jurisdiccional del Art. 8 de la propia ley, desde la enmienda de 1996. Así lo interpretamos.
Pero, además, si aceptáramos la proposición de las re-curridas en el sentido de que el Art. 8 de la Ley de Gaso-lina, supra, no incluía en su ámbito jurisdiccional el Art. 4A para el año en que estos instaron su causa de acción, tendríamos que resolver de todos modos que la enmienda de 2005 no constituiría una enmienda con efecto retro-activo. Nos explicamos.
*935 La inclusión del Art. 4A de la Ley de Gasolina, supra, al ámbito jurisdiccional del Art. 8 de la Ley de Gasolina, supra, mediante la enmienda de 2005, constituyó un cambio en el aspecto jurisdiccional de este artículo. Esto es, desde la enmienda de 2005 toda causa de acción al amparo del Art. 4A de Ley de Gasolina, supra, se encuentra compren-dida bajo el ámbito jurisdiccional del Art. 3 de la Ley de Monopolios, supra (10 L.P.R.A. sec. 259). Siendo así, la en-mienda de 2005, en efecto, produjo que ya no se pueden ejercer causas de acción privadas al amparo de este artí-culo y que es D.A.Co. el que adviene a tener jurisdicción primaria exclusiva.
Desde el 1905 esta Curia resolvió, interpretando el Art. 3 del Código Civil, supra, que
... es un principio de derecho español, que los estatutos que regulan la jurisdicción y el procedimiento, son de interés pú-blico, y empiezan [a] regir retroactivamente, [o] más bien, que no son consideradas como retroactivas en tal sentido, que cai-gan bajo las restricciones de este artículo. (Énfasis suplido.)(62)
Así también, en Texas Co. v. Sancho Bonet, Tes., 52 D.P.R. 658, 667(1938), señalamos que
... como se dice en 59 Corpus Juris 1173, resumiendo la juris-prudencia, "... La regla general de que los estatutos sólo se interpretarán prospectivamente (prospectively) y no retrospec-tiva o retroactivamente, de ordinario no es aplicable a estatu-tos que afectan el remedio o procedimiento, o, conforme se dice de otro modo, esa regla general está sujeta a una excepción cuando se trata de un estatuto relativo al remedio o procedimiento”. (Énfasis suplido.)
De manera que, considerando que la enmienda produ-cida por la Ley Núm. 74-2005 al Art. 8 de la Ley de Gaso-lina, supra, tuvo claramente un efecto sobre los procesos y la jurisdicción del tribunal de instancia en causas de acción al amparo del Art. 4A de la Ley de Gasolina, supra, tal
*936 enmienda es retroactiva en el marco que el Art. 3 del Código Civil, supra, lo prohíbe.(63)
IV
Por todo lo anterior, se revoca la Resolución emitida por el Tribunal de Apelaciones y, en consecuencia, se desestima la causa de acción fundamentada en el Art. 4A de la Ley de Gasolina, supra, ante el Tribunal de Primera Instancia, por falta de jurisdicción.

Se dictará sentencia de conformidad.

El Juez Presidente Señor Hernández Denton emitió una opinión disidente, a la cual se unió la Juez Asociada Señora Rodríguez Rodríguez.

 23 L.P.R.A. sec. 1104a.

 Véase Art. 1(f) de la Ley de Control de Productores, Refinadores y Distribui-dores-Mayoristas de Gasolina (Ley de Gasolina), 23 L.P.R.A. sec. 1101(f).

 Véase Art. 1(g) de la Ley de Gasolina, supra, 23 L.P.R.A. sec. 1101(g).

 10 L.P.R.A. sec. 263.

 El 1 de octubre de 2004, Esso solicitó por primera vez la desestimación de la demanda, basado en que el Art. 4 de la Ley de Gasolina desplazaba la aplicación del Art. 7 de la Ley de Monopolios y Restricción del Comercio (Ley de Monopolios) (caso DAC2005-0343). Sin embargo, el Tribunal de Primera Instancia denegó la solicitud de desestimación, por lo que Esso recurrió ante el Tribunal de Apelaciones (caso KLCE2005-00564). El Tribunal de Apelaciones denegó la expedición del auto me-diante Resolución de 26 de mayo de 2005. Entonces, Esso recurrió ante este Tribunal mediante certiorari, el cual denegamos el 10 de noviembre de 2005. Tal determina-ción advino final y firme, continuando así los procedimientos ante el Tribunal de Primera Instancia.

 32 L.P.R.A. Ap. III.

 Apéndice de la Petición de certiorari, pág. 179.

 También ordenamos a la Procuradora General de Puerto Rico que compare-ciera y expresara su posición sobre la controversia, en carácter de amicus curiae; la Procuradora General así lo hizo.

 Véase Exposición de Motivos de la Ley de Gasolina, 1978 Leyes de Puerto Rico 16-17.

 Exposición de Motivos de la Ley de Gasolina, supra.

 íd.

 23 L.P.R.A. sec. 1131.

 Véase la Exposición de Motivos de la Ley de Reglamentación y Control de la Industria de la Gasolina, Ley Núm. 73 de 23 de junio de 1978, según enmendada, 23 *913 L.P.R.A. sec. 1131 et seq. (Ley Núm. 73).

 íd.

6)íd.

 23 L.P.R.A. sec. 1131.

 23 L.P.R.A. sec. 1133(a).

 Como detallaremos más adelante, la Oficina de Asuntos Monopolísticos (O.A.M.) es una entidad adscrita al Departamento de Justicia, con facultades para la administración de la legislación sobre prácticas monopolísticas, así como para la fiscalización de éstas.

 Actualmente, Departamento de Desarrollo Económico y Comercio.

 23 L.P.R.A. sec. 1133(c)-(h).

 23 L.P.R.A. sec. 1134.

 Por su parte, el Art. 5 de la Ley de Gasolina, supra, 23 L.P.R.A. see. 1105, dispone para que todo productor o refinador de petróleo o distribuidor-mayorista de productos de petróleo que supla gasolina o combustibles especiales a detallistas, le aplique uniformemente a todos los vendedores al detal a quienes supla, de la renta de equipos y rótulos, cuando de una forma directa o indirecta éstos sean provistos a dichos detallistas por ese productor, refinador o distribuidor-mayorista.
Mientras, el Art. 6 de la Ley de Gasolina, supra, 23 L.P.R.A. see. 1106, ordena la distribución uniforme de combustible en periodos de escasez o disminución en el abasto o disponibilidad de gasolina o de combustibles especiales. El Art. 7 de la mencionada ley, 23 L.P.R.A. see. 1107, prohíbe que un vendedor al detal de combustible, a sabiendas, solicite o induzca la concesión, o rebaja en precios o en la renta de equipos y rótulos, en violación a los Arts. 4 y 5 de la Ley de Gasolina, 23 L.P.R.A. see. 1107.

 23 L.P.R.A. sec. 1101(j).

 23 L.P.R.A. sec. 1108.

 23 L.P.R.A. sec. 1110.

 Art. 8 de la Ley Núm. 3 de 25 de marzo de 1978.

 Véase Exposición de Motivos de la Ley Núm. 157-1996 (Ley Núm. 157), 1996 Leyes de Puerto Rico 683.

 íd.

 íd.

 íd.

 23 L.P.R.A. sec. llOKj).

 Véase P. de la C. 2288 de 30 de enero de 1996, 7ma Sesión Ordinaria, 12 Asamblea Legislativa, pág. 7.

 170 D.P.R. 582, 595 (2007).

 J. von Kalinowski, Antitrust Laws and Trade Regulation, Sec. 1.02, Second ed. (2004).

 15 U.S.C.A. sec. 1 et seq.

 15 U.S.C.A. sec. 12 et seq.; P.R. Fuels, Inc. v. Empire Gas Co., Inc., 149 D.P.R. 691, 706-707 (1999).

 G.G. & Supp. Corp. v. S. & F. Systs., Inc., 153 D.P.R. 861, 869 (2001).

 10 L.P.R.A. sec. 259(a).

 10 L.P.R.A. sec. 259(c).

 Diario de Sesiones del Senado de Puerto Rico de 22 de mayo de 1964, pág. 1706.

 Art. 16(a) de la Ley de Monopolios, 23 L.P.R.A. sec. 272(a).

 10 L.P.R.A. sec. 259(b).

 Colón Cabrera v. Caribbean Petroleum, supra, pág. 594.

 23 L.P.R.A. sec. 259(e).

 23 L.P.R.A. sec. 259(d).

 23 L.P.R.A. sec. 259(e).

 23 L.P.R.A. sec. 259(g).

 3 L.P.R.A. sec. 341e(x).

 íd.

 10 L.P.R.A. sec. 268(a).

 10 L.P.R.A. sec. 268(c).

 El Art. 12(a) también incluye dentro de dicha excepción lo dispuesto en 10 L.P.R.A. sec. 261.

 Véase Alegato de la parte peticionaria, pág. 15.

 R. Hernández Colón, Práctica jurídica de Puerto Rico: derecho procesal civil, 4ta ed., San Juan, Ed. Lexisnexis, 2007, Sec. 2601, pág. 234.

 La nueva Regla 10.8(c) de Procedimiento Civil, 32 L.P.R.A. Ap. V, señala que “[s]iempre que surja, por indicación de las partes o de algún otro modo, que el tribunal carece de jurisdicción sobre la materia, éste desestimará el pleito”.

 Col. Peritos Elec. v. A.E.E., 150 D.P.R. 327, 331 (2000). Véase, además, Hernández Torres v. Gobernador, 129 D.P.R. 824, 835 (1992).

 Véase, además, D. Fernández, Derecho administrativo y Ley de Procedi-miento Administrativo Uniforme, 2da ed. rev., Bogotá, Ed. Forum, 2001, Sec. 8.3, pág. 437 esc. 1.

 SLG Semidey Vázquez v. ASIFAL, 177 D.P.R. 657, 677 (2009).

 Véase la demanda instada por los recurridos. Apéndice de la Petición de certiorari, págs. 79-84.

 Diario de Sesiones de la Cámara de Representantes, 22 de mayo de 1964, pág. 1708.

 El Art. 3 del Código Civil establece lo siguiente:
“Las leyes no tendrán efecto retroactivo, si no dispusieran lo contrario. En nin-gún caso podrá el efecto retroactivo de una ley perjudicar los derechos adquiridos al amparo de una legislación anterior.” 31 L.P.R.A. see. 3.

 American Railroad Co. of P.R. v. Hernández, 8 D.P.R. 516, 520 (1905).

 J.R.T. v. A.E.E., 133 D.P.R. 1, 13, (1993). Véanse, además: Texas Co. v. Sancho Bonet, Tes., 52 D.P.R. 658, 667 (1938); R.E. Bernier y J.A. Cuevas Segarra, Aprobación e intepretación de las leyes en Puerto Rico, 2da ed., San Juan, Pubs. J.T.S., 1987, Vol. I, Cap. 63.